[Civ. No. 30856.   Second Dist., Div. One.   Nov. 28, 1966.]

DUANE EDGAR, Petitioner, v. WORKMEN'S COMPENSA-
TION APPEALS BOARD, NAVAJO FREIGHT
LINES et al., Respondents.

Steven Roseman for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Grogan & Hogan and Maurice R. Hogan, Jr., for Respondents.

McCOY, J. pro tem.*—Petitioner (applicant) seeks review and annulment of an award of workmen's compensation. He contends: (1) that he was denied procedural due process because of the referee's refusal to admit certain evidence; and (2) that the evidence refused, being evidence of medical treatment by physicians furnished by respondents (employer and insurer), compels a finding that applicant was entitled to con-

---

*Assigned by the Chairman of the Judicial Council.

tinuing temporary disability benefits rather than the temporary disability benefits from August 11, 1964, through December 20, 1964, and the permanent disability benefits based on a rating of 17 percent as granted by the award.

Petitioner, a truck driver, sustained an admitted industrial injury to his left knee and back on July 14, 1964. In August 1964 he was hospitalized and a cartilage was removed from his knee. Respondents employer and insurer provided medical treatment and paid temporary disability benefits for the period from August 11, 1964 to November 2, 1964. The attending physician released him for work on November 4, 1964. Petitioner did not return to work at that time. Later he obtained some self-procured treatment. From January 1965 to March 1966 he was furnished occasional medical treatment by respondents. On March 29, 1965, he filed a claim asserting that temporary disability continued and that he was in need of medical treatment. Petitioner returned to work for about 10 days in June of 1965. From that time to the date of the final hearing of the matter on March 15, 1966, he did not work.

A hearing of the claim was had on October 8, 1965. The minutes of the hearing show that petitioner was the only witness and that certain medical records were received in evidence. The referee's order of disposition states: ''Applicant is to be referred to an IME in an appropriate field for his injury, with authority to perform all necessary X-rays or laboratory tests deemed necessary, at the expense of the defts. The report of the IME will be filed and served on the parties who shall have seven days for rebuttal; further disposition at that time.''

On October 20, 1965, the referee requested the medical bureau to refer the petitioner to an independent medical examiner for his opinion on the following questions: (1) Was disability to petitioner's back and knee permanent and stationary, or was he able to return to his regular work on November 4, 1964? (2) If not on that date, approximately when, if at all? (3) If disability is permanent and stationary, what are the permanent disability factors? (4) Is petitioner in need of further medical treatment for back and knee? On November 10, 1965, petitioner was examined by the independent medical examiner, Dr. Gilfillan. The doctor's report was received by the medical bureau on December 10, 1965. The report reflects that Dr. Gilfillan reviewed the medical history and records to that date and took additional X-rays. His opinion was: ''This patient should be able to carry out his work, and should have

been able to carry this out any time after approximately the 20th of December 1964."

On December 20, 1965, the referee requested a rating from the rating bureau based on the following factors: "Objective: Loss of 30 degrees of flexion of left knee. Subjective: Pain in left knee about 15 minutes a day generally swelling on walking around a good deal. Back: Symptoms in low back in the degree less than slight." On December 22, 1965, the rating expert recommended a rating of 17 percent.

On December 29, 1965, petitioner's counsel by letter acknowledged receipt of the recommended rating and a copy of Dr. Gilfillan's medical report, and requested that the matter be set for hearing to allow cross-examination of the doctor and the rating expert and presentation of rebuttal evidence. In a letter to the referee dated January 3, 1966, petitioner's counsel pointed out that the medical report did not refer to a neck condition which petitioner asserted was also caused by the industrial injury and requested that the petitioner be referred again to Dr. Gilfillan in the event the doctor did not have sufficient information to write a supplementary report concerning that condition. In a later letter he advised the referee that if the doctor was not instructed to examine petitioner's neck there would be no need to cross-examine him although petitioner would present rebuttal evidence.

Further hearing was had on March 15, 1966. At the hearing petitioner waived cross-examination of the rating expert and the doctor. His counsel sought to present as rebuttal evidence the testimony of Dr. Walter Prusait and petitioner. Upon objection by respondents, the testimony was taken as an offer of proof, subject to later decision by the referee as to whether it would be admitted. Dr. Prusait's testimony was to the effect that he had examined petitioner on January 18, 1966, for the respondent employer and found that because of the petitioner's subjective complaints of pain he was not able to return to work for the respondent employer as a truck driver. His report was received for identification. Petitioner's testimony was that he had received medical treatment on January 17, 1966, and again within the past week, consisting of a shot of cortisone in his left knee joint from Dr. O'Neill, a physician furnished by the respondents, that he had not worked since he last testified, and that Dr. O'Neill had recommended further treatment. Upon respondents' objection to the latter testimony as hearsay, petitioner's counsel asked that Dr. O'Neill's report be admitted when prepared. Respondents' counsel advised that

he would check and if any medical reports from Dr. O'Neill were available they would be filed. The order of disposition by the referee stated: "Twenty days to the parties to submit Points and Authorities on the question of receiving into evidence as rebuttal, testimony taken today; the same time for deft. to secure and file and serve the latest report or reports from Dr. O'Neill, if they are available."

On April 4, 1966, respondents filed reports of Dr. O'Neill dated October 1, 1965, January 17, 1966, and March 9, 1966, with a statement that they were not offering them but merely filing them. On April 11, 1966, petitioner's counsel requested that these reports be received in evidence. These reports show that on the first two dates petitioner had been treated by injections of cortisone in his knee. In the last report, Dr. O'Neill states: "I wish to recommend at this time and request authorization for a left patella plasty. A period of temporary disability following such a procedure would extend for eight to twelve weeks. Please let me know your consideration in this regard."

The findings and award issued on April 26, 1966. In his opinion of the same date the referee sustained the respondents' objection to the testimony of Dr. Prusait and of petitioner given at the hearing on March 15, 1966. On petition for reconsideration the referee again sustained the objection to this evidence and refused to admit the medical reports of Dr. O'Neill in evidence on the ground that these items were not proper rebuttal evidence and that the evidence was merely cumulative. In making this determination, he said in part: "To permit further medical reports or testimony thereafter would make the appointment of the Independent Medical Examiner an idle act. The fact that the medical evidence that the applicant has offered is the testimony and the reports of the defendants' doctors which conflict with the opinion of the Independent Medical Examiner should make no difference . . . . It should be noted that the offer into evidence of Dr. O'Neill's report filed by the defendants comes for the first time on appeal. At the hearing with which we are concerned, applicant's only offer was that of Dr. Prusait and applicant's testimony." In his summary he concluded that the evidence offered by petitioner frustrated the purpose of appointing an independent medical examiner.

On reconsideration, the board allowed reimbursement for certain self-procured medical treatment but affirmed the referee's refusal to admit the testimony and medical reports in

evidence, stating that it adopted the reasons contained in the referee's report on reconsideration.

■ The right to an opportunity "to produce evidence in explanation or rebuttal" of medical reports or matters added to the record subsequent to a hearing is statutory (Lab. Code, § 5704). A denial of that right is a denial of due process which compels annulment of an award so that a fair hearing may be had. (*Caesar's Restaurant* v. *Industrial Acc. Com.*, 175 Cal. App.2d 850, 853-854 [1 Cal.Rptr. 97] and cases cited therein.)

Rebuttal evidence is generally defined as evidence addressed to the evidence produced by the opposite party and does not include mere cumulative evidence of the plaintiff's case in chief. (48 Cal.Jur.2d 154-155.) The particular issues here were whether petitioner's condition had become permanent and stationary and if so, when and whether he was in need of further medical treatment. ■ A disability is considered permanent when the medical evidence establishes that no major change is expected for better or worse and the condition will remain substantially the same thereafter. (See *Sweeney* v. *Industrial Acc. Com.*, 107 Cal.App.2d 155 [236 P.2d 651]; *Dahlbeck* v. *Industrial Acc. Com.*, 135 Cal.App.2d 394 [287 P.2d 353]; Cal. Admin. Code, tit. 8, § 10900.) ■ Continuing medical treatment is not necessarily inconsistent with a permanent disability. (*Industrial Indem. Exchange* v. *Industrial Acc. Com.*, 90 Cal.App.2d 99, 102 [202 P.2d 850].) The evidence which petitioner sought to have admitted, except for Dr. O'Neill's report of treatment on October 1, 1965, was medical evidence of petitioner's condition subsequent to November 10, 1965, the date of his examination by the independent medical examiner. It was supplemental, not cumulative. The effect of excluding this evidence was to make the award dated April 26, 1966, speak as of November 10, 1965, the date of the examination by the independent medical examiner.

The question is whether supplemental medical evidence tending to show a new or continuing or recurrent disability based on examination and treatment between the date of examination by an independent medical examiner and the date of final submission should be admitted. We find no case in which this question has been answered.

■ Beyond the right to cross-examine or produce rebuttal evidence, the granting of continuances and further hearings rests in the sound discretion of the trier of fact. (*Allied Comp. Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 115, 122 [17 Cal. Rptr. 817, 367 P.2d 409].) The rules of practice and procedure

of the Workmen's Compensation Appeals Board provide that the parties are expected to submit for decision all matters at a single hearing (Cal. Admin. Code, tit. 8, § 10548), and that a further hearing will not be granted except for good cause and in the sound discretion of the board or referee (Cal. Admin. Code, tit. 8, § 10560).

The jurisdiction of the board is a continuing one within certain statutory limits. (Lab. Code, §§ 5803, 5410.) After disability benefits have been awarded, a recipient may reopen his case on the ground that his condition has changed or worsened. (Lab. Code, § 5410; *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 231 Cal.App.2d 501, 506 [42 Cal.Rptr. 58].)

■ However, it appears that evidence as to facts which are known and events which occur during the pendency of an original claim cannot be received in support of a claim for new and further disability. (Lab. Code, § 5410.) Reopening after an award for new and further disability appears to require that the new and further disability arose after the original award. (Lab. Code, § 5410.) The cases hold that there is good cause to reopen under Labor Code section 5803 only when there is a showing of some relevant circumstance which was unknown to the board at the time it made its original award. (*Consolidated Western Steel Div.* v. *Industrial Acc. Com.*, 205 Cal.App.2d 275, 278 [23 Cal.Rptr. 147]; *Pullman Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 379, 388 [170 P.2d 10]. In light of these rules it appears that had petitioner failed to offer the intervening medical evidence he would have foreclosed his right to do so at a later date.

The board's rules of practice and procedure also provide that all physicians' reports acquired during the pendency of the particular phase of the proceedings shall, within 5 days of receipt, be filed with the board and served on the parties. (Cal. Admin. Code, tit. 8, § 10615.) The board or referee may decline to receive in evidence any report offered by a party who has failed to comply, or, if there is wilful suppression, shall presume that the findings and opinions therein would be adverse. (Cal. Admin. Code, tit. 8, § 10622.) The latter section also provides that a medical report shall not be refused admission at a hearing solely upon the ground of late filing where examination was diligently sought and the report came into possession of the party offering it within the preceding 7 days.

■ Here, the doctor furnished by respondents reported or should have reported to them. They did not timely file the first two reports. Because the last examination of petitioner was

made on March 9, 1966, and the hearing was on March 15, respondents were not in violation of the rules in respect to the final report in which Dr. O'Neill advised that petitioner's condition had grown worse. In any event, the petitioner's rights could not be prejudiced by respondents' delay in filing the three reports.

We note that respondents filed the three reports on April 4, 1966. In a covering letter to the board, their counsel said that they had "concluded that the applicant did have the right to present rebuttal evidence against the report of Dr. Gilfillan," which "seems to stem from Labor Code section 5704." This conclusion is in accord with *Massachussetts etc. Ins. Co.* v. *Industrial Acc. Com.*, 74 Cal.App.2d 911 [170 P.2d 36], where it was held that a reasonable opportunity to meet and rebut the evidence produced by an opponent is generally regarded as one of the essentials of the minimal requirements of due process. As the court there said (p. 914) with reference to section 5704 of the Labor Code: "The Legislature may reasonably be presumed to have expected that when evidence, oral or documentary, was introduced during an open hearing the parties would be accorded as of course a reasonable opportunity to meet it," in order to meet the constitutional requirement of due process. (See also *Caesar's Restaurant* v. *Industrial Acc. Com.*, 175 Cal.App.2d 850, 853-854 [1 Cal.Rptr. 97], to the same effect.) It is also significant that in their covering letter respondents' counsel said: "In view of the conflict between these enclosed reports and that of the IME, the Referee might consider referring applicant to Dr. Gilfillan for a re-examination and that the enclosed reports be sent to Dr. Gilfillan for his review."

Assuming that the referee and the board had any discretion in the matter, their refusal to receive and consider the evidence offered by petitioner to rebut the report of the independent medical examiner on which the award was based was an abuse of that discretion.

The award is annulled, and the matter is remanded to the Workmen's Compensation Appeals Board for further proceedings in accordance with the views expressed in this opinion.

Wood, P. J., and Lillie, J., concurred.