[L.A. No. 29804. In Bank. Feb. 23, 1971.]

JOSEPH C. HEGGLIN, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, AIRPORT
GARDENA HOTEL CORPORATION et al., Respondents.

164

**COUNSEL**

Kessler & Drasin, Lawrence Drasin and Roger J. Gleckman for Petitioner.

Rupert A. Pedrin, Sheldon M. Ziff, Gabriel Sipos, McLaughlin, Evans, Dalbey & Cumming and Barry F. Evans for Respondents.

**OPINION**

**SULLIVAN, J.**—Petitioner Joseph C. Hegglin seeks review and annulment of the opinion and decision after reconsideration of the Workmen's Compensation Appeals Board (Board) which limited the rating for his permanent disability to 43¼ percent.

On February 15, 1964, petitioner, who was employed as a pastry chef, suffered an industrially caused accident when he slipped on a wet kitchen floor, striking his back against a sink and his feet against a freezer, and

severely twisting his right knee. The injuries thus sustained required a medial menisectomy of the right knee which was performed on April 17, 1964, and a spinal fusion and laminectomy, which were performed a year later.

As a result of the multiple blood transfusions administered to petitioner in connection with the second operation, he contracted serum hepatitis, for which he was hospitalized from July 31, 1965, until September 12, 1965. He returned to work on December 15, 1965, but since that time he has been able to work only intermittently, and has repeatedly been hospitalized or confined to bed rest to treat recurrences of the hepatitis.

On December 18, 1964, petitioner filed an application with the Industrial Accident Commission (now the Board) seeking a determination of liability for temporary and permanent disability, for medical treatment and costs, and for litigation expense. A hearing was held on March 17, 1965, at which petitioner testified and medical reports were received in evidence. The case was continued until May 19, 1965, when a further hearing was held at which several of the doctors who had treated petitioner testified. On June 10, 1965, the referee filed findings and award establishing that both the knee and back injuries were caused by the accident and providing for temporary disability indemnity and further medical treatment. Respondents' petition for reconsideration was denied.

At the request of petitioner's counsel, and upon advice of Dr. Goldfarb, petitioner's treating physician for hepatitis, a supplemental hearing was held on October 25, 1968, to determine liability for permanent disability. Petitioner testified and the medical reports of several doctors regarding his hepatitis condition were received in evidence. On the basis of this evidence the referee requested a permanent disability rating giving the following description of the factors of disability: "*Back* disability precluding applicant from work involving lifting more than 25 pounds or bending; constant slight numbness and weakness of lower right leg and knee becoming slight to moderate upon prolonged weightbearing; slight to moderate fatigue due to *hepatitis* after two hours of work activity becoming moderate after six hours limiting applicant to light work activities." The rating bureau returned a recommended rating of 71 percent, assigning the hepatitis condition a rating of 50 percent, the back injury a rating of 35 percent and the knee injury a rating of 5 percent. The individual ratings were then properly adjusted to reflect petitioner's age and occupation and modified by use of the multiple disabilities rating schedule. On December 19, 1968, the referee filed supplemental findings and award, finding permanent disability of 71 percent and awarding petitioner ac-

crued but unpaid temporary disability indemnity, permanent disability indemnity payable at specified weekly rates for the remainder of his life, lifelong medical treatment and other miscellaneous items.

The Board granted the employer's petition for reconsideration and ordered petitioner to be examined by Dr. Thomason of the Medical Bureau of the Division of Industrial Accidents. On April 4, 1969, Dr. Thomason reported the results of his examination, stating at the conclusion of his report the following: "DISCUSSION AND OPINION There is a disability as a result of the injury which is permanent and stationary as far as the back and right knee are concerned. [Par.] Factors of Disability: 1. Loss of back motion. 2. Very slight instability of right knee. 3. The subjective complaints are considered slight for the back and slight for the right knee. 4. Because of the giving way of the right knee, he should not walk on uneven terrain nor should he climb stairs rapidly. (Particularly downstairs) 5. Because of the back, he should be precluded from heavy work and limited to moderate work." Dr. Thomason declined to render an opinion as to petitioner's hepatitis since he did not "feel qualified to determine the disability and future care of such." The Board then requested a permanent disability rating upon the following description of the factors of disability: "Constant slight pain in the low back increasing after being on feet for 3 or 4 hours. [Par.] Right knee disability with slight pain after being on feet for 3 or 4 hours or in cold weather which gives way when walking on uneven terrain or in sand. Because of knee disability applicant should not walk on uneven terrain nor should he climb or descend stairs rapidly. [Par.] Slight to moderate fatigue from hepatitis limiting applicant to no heavy work or heavy exertion." The rating bureau returned a recommended rating of 43¼ percent, assigning a rating of 30 percent to the hepatitis condition, 10 percent to the back condition and 10 percent to the knee injury. The individual ratings were then properly adjusted by use of the multiple disabilities rating schedule.

On June 12, 1969, a supplemental hearing was held at which the rating specialist was cross-examined and petitioner testified in rebuttal. A further supplemental hearing, at which Drs. Thomason and Goldfarb were cross-examined, was held on December 11, 1969. At the conclusion of the cross-examination petitioner sought to testify in rebuttal to Dr. Goldfarb's testimony. Petitioner also sought to call Dr. Field, an internist who had examined petitioner with regard to his hepatitis condition. However, the Board found such testimony unnecessary and denied petitioner's motions for further hearings to present such testimony.

On February 11, 1970, the Board rendered its opinion and decision after reconsideration. The Board stated: "Although the report of permanent

disability describes applicant's back condition in terms of subjective complaints, we are satisfied that applicant is precluded from heavy work as a result of both his back condition and hepatitis. He is precluded from heavy work by either or both conditions, and separately stating the conditions causing the preclusion will not affect the rating which results from the preclusion in this situation. . . . We are persuaded that it would be erroneous to describe the disabilities arising from both the back injury and the hepatitis as precluding applicant from heavy work and suggesting that the two be added together. Based on the foregoing description, the Permanent Disability Rating Specialist has recommended a permanent disability rating of 43¼ percent after application of the multiple disabilities table. . . . We are satisfied that applicant's disability is properly rated at 43¼ percent and we are not persuaded that this rating was altered in the course of the cross-examination of the Permanent Disability Rating Specialist." Accordingly as part of said opinion the Board made its findings and award determining that petitioner's injury caused permanent disability of 43¼ percent (instead of 71 percent) and awarding petitioner permanent disability of $9,082.50 (instead of $14,910), thereby eliminating a lifetime pension, but providing for lifetime medical care and treatment.

 Initially, petitioner contends that the Board gave him no permanent disability rating for his hepatitis condition. He argues that on the uncontradicted testimony, his back condition limited him from lifting more than 25 pounds and merited a rating of 30 percent (which it was given in the rating based on the referee's description of the factors of disability). Petitioner notes that the rating given on the Board's description assigns the back a rating of 10 percent for the slight pain, but no rating on the inability to lift more than 25 pounds. The factor of inability to perform heavy work was included in the Board's description of the hepatitis condition, and that condition was given a 30 percent rating. Thus, petitioner contends, he would have received the same overall 40 percent rating (30 percent for inability to do heavy work plus 10 percent for slight pain) had he never suffered the hepatitis at all. He therefore concludes that the Board must totally have ignored the factors of disability caused by his hepatitis

Contrary to petitioner's claim, the Board did not ignore his hepatitis condition. It gave the following description in its request for a rating: "Slight to moderate fatigue from *hepatitis* limiting applicant to no heavy work or heavy exertion." (Italics added.) Thus, the petitioner did receive a rating for his hepatitis condition.

What actually happened, as revealed by the Board's decision, was that the Board thought "it would be erroneous to describe the disabilities arising from both the back injury and hepatitis as precluding applicant from heavy

work and suggesting that the two be added together." The Board, therefore, deleted from its description of the back injury any mention of the limitation from heavy work. As we apprehend it, the point of petitioner's contention appears to be this: that the last mentioned action by the Board *in effect* denied him a rating on the hepatitis since, as shown above, he would have received the same overall rating if he had never contracted hepatitis. The propriety of the Board's action is raised more directly by another contention of petitioner, which we discuss *infra*.

■ Petitioner's second contention is that the Board should have disregarded the testimony of Dr. Goldfarb because such testimony was based on conjecture, speculation and unwarranted assumptions. The crucial testimony of Dr. Goldfarb was his opinion that petitioner could perform moderate work. In reports submitted to the referee, Dr. Goldfarb had stated that petitioner should be limited to light work; however, in reports and under cross-examination after the Board had granted reconsideration, Dr. Goldfarb was of the opinion that petitioner's progress since the referee's decision showed that he could perform moderate as well as light work. Dr. Goldfarb's testimony was the only evidentiary basis for the Board's change of the description of disability factors from limitation to light work (which had appeared in the referee's description) to a preclusion from heavy work. This change resulted in a reduction of the disability rating by approximately 20 percent. Petitioner contends that Dr. Goldfarb's testimony did not constitute substantial evidence which would support the Board's change of the work limitation.

■ The Board's descriptions of the factors of disability in its instructions to the rating bureau constitute, in effect, findings of fact as to the nature and extent of the disability. (*Fidelity & Casualty Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327, 331 [60 Cal.Rptr. 442].) In reviewing such findings of fact our "legislative mandate and sole obligation under section 5952 [Lab. Code] is to review the entire record to determine whether the board's conclusion was supported by substantial evidence." (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) However, as we set forth at length in *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378-379 [90 Cal.Rptr. 424, 475 P.2d 656], not all expert medical opinion constitutes substantial evidence upon which the Board may rest its decision. **(4)** Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, or on incorrect legal theories. Medical opinion also fails to support the Board's findings if it is based on surmise, speculation, conjecture, or guess. (*Id.*) Accordingly, whether Dr. Goldfarb's testimony was substantial evidence in support of

the Board's findings must be determined by the material facts upon which his opinion was based and by the reasons given for his opinion.

Petitioner contends that the information adduced on cross-examination of Dr. Goldfarb shows that his testimony was not substantial evidence. Dr. Goldfarb, who had treated him for his hepatitis, acknowledged that, at the time he concluded that petitioner could do moderate work, he knew that petitioner had been unable to work for five of the preceding six months due to a recurrence of the hepatitis. He also stated that there was some relationship between increased physical exertion and petitioner's fatigue due to hepatitis. Dr. Goldfarb thought that petitioner would be subject to intermittent recurrences of hepatitis and that he should take a week of rest two or three times a year. The doctor admitted that he never asked precisely what duties petitioner had as a pastry cook, or what the physical requirements of that job were. He also could not recall having asked petitioner how the latter felt when last examined. While Dr. Goldfarb stated that the level of liver enzymes in petitioner's blood was higher than in a normal person unafflicted with hepatitis, he believed that persons in his condition were "better off doing a regular work activity than being made a cripple and told they could not work" and that work would not "have any adverse affects on the course of [petitioner's] liver disease."

In light of the above testimony we cannot say as a matter of law that Dr. Goldfarb's opinion of petitioner's ability to perform moderate work did not constitute substantial evidence. His opinion is not inconsistent with the acknowledgement that petitioner had suffered and would continue to suffer recurrences of hepatitis. During such recurrences he would be unable to work, but between such recurrences it is perfectly possible that he would be able to perform moderate work. A knowledge of the particular duties of a pastry cook was not necessary to the formulation of an opinion regarding his ability to perform a general class of work known as moderate work. While Dr. Goldfarb may not have asked petitioner how he felt at the time of the last examination, he had asked him that question at other examinations. Furthermore, petitioner's subjective complaints were not the sole basis for evaluation of his hepatitis condition; rather Dr. Goldfarb's testimony was based primarily upon tests of the level of liver enzymes in his blood. Those tests showed that his hepatitis condition had improved. The fluctuations in petitioner's subjective feelings, like the fluctuations in the level of enzymes in his blood, were consistent with the opinion that he was subject to recurrences of hepatitis but that between recurrences he was capable of moderate work. The opinion of Dr. Goldfarb that persons in petitioner's condition were better off when working was not a misconceived notion of legal principles, but rather a perfectly proper

medical opinion. While all these factors might have been taken into account in the Board's determination of the weight of Dr. Goldfarb's testimony, we conclude that they do not demonstrate that Dr. Goldfarb's testimony was incredible or of no solid value. It was substantial evidence in support of the Board's description of the factors of petitioner's permanent disability.

We turn now to petitioner's complaint that the Board committed error in its request for a recommended disability rating by failing to describe in full the factor of disability relating to his back injury which disability, among other things, prevented him from lifting more than 25 pounds. He also contends that the Board, in violation of section 5908.5 of the Labor Code, failed to state the evidence upon which it relied and did not specify in detail its reasons for not fully describing this factor of disability.

It is apparent from the Board's decision that it felt that the inability to lift more than 25 pounds caused by the back injury and the fatigue caused by the hepatitis each separately precluded Hegglin from performing heavy work, but that the combination of the two conditions resulted in no greater disability. The Board concluded that the two conditions overlapped, and to the extent of the overlap only one rating should be given.

Petitioner, however, contends that the two conditions do not overlap; that the back injury affects his physical strength in the performance of heavy work; whereas, the hepatitis affects his stamina. Furthermore, petitioner points out that the hepatitis has the additional effect, unmentioned by the Board, of removing him from the labor market entirely during the periods of recurrence of the disease. He also argues that the Board failed to state any evidence or give any reasons to support its conclusion that the two conditions overlapped.

The injury to petitioner's back which prevented him from lifting more than 25 pounds was a factor of disability entirely separate and distinct from the factor of impaired liver function caused by the hepatitis. "The individual physical and mental abnormalities resulting from injury are referred to as 'factors' of permanent disability. The individual factors taken together constitute the entire permanent disability." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar) § 17.13, pp. 537-538.) Here, it is clear that the injury to the back and the impairment of liver functions (caused by the hepatitis) were separate and individual physical abnormalities resulting from the single industrial accident. The record demonstrates that every witness treated the two factors separately. The injury to the spine and the destruction of liver cells and liver functions

obviously involve impairment or abnormalities of separate portions of the anatomy. Furthermore, it is clear that the two factors impose separate limitations on petitioner's capacity to work. The back injury caused a weakness which precluded him from lifting heavy objects at any time; but the impairment of liver functions limited his capacity to work only after several hours of exertion. Because of his back disability he can no longer perform work requiring strenuous use of the back. In addition, due to his hepatitis condition, he can hold only those jobs which do not require sustained physical exertion of any kind and which allow him to take unpredictable absences averaging three weeks per year. In sum, the impaired function of the back and the impaired function of the liver, with their respective disabling consequences mentioned above, were separate and individual abnormalities and hence separate factors of disability.

Since the back condition and the hepatitis condition were independent factors of disability, each of them should have been described in the request to the rating bureau. The Board's own rules require this. Section 10904 of title 8 of the California Administrative Code states: "The Permanent Disability Rating Bureau may be requested by the Appeals Board or a referee to prepare formal recommended ratings on a form furnished by the Administrative Director for that purpose. [Par.] The person making the request shall *describe the disability in full* on the face of the request." (Italics added.) If the Board does not set forth all factors of disability, the recommended rating cannot be a proper rating for the case. Furthermore, the failure to set forth all factors of disability forecloses proper judicial review in much the same manner as does reliance on secret findings of fact. (See *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal. App.2d 327, 334.) ■ Assuming that the Board may not be required in all cases to obtain a recommended rating from the rating bureau (*City of Los Angeles* v. *Industrial Accident Commission* [*Pendergraph*] (1965) 30 Cal.Comp.Cases 230; *California Casualty Indemnity Exchange* v. *Industrial Accident Commission* [*Peak*] (1948) 13 Cal.Comp.Cases 258), we nevertheless hold that if the Board *does* obtain a recommended rating, it must follow its own rules and set forth in its instructions to the rating bureau a full description of every factor of the applicant's disability. (See *Subsequent Injuries Fund* v. *Industrial Acc. Com.* [*Rogers*] (1964) 226 Cal.App.2d 136, 152 [37 Cal.Rptr. 844].)

■ The Board contends, however, that this rule should not be applied where the factors of disability overlap. We have not found, nor have the parties directed our attention to any reported decisions dealing with the problem of rating separate but overlapping factors of disability which arise from the same industrial accident, nor to our knowledge have any commentators discussed this problem. In *State Compensation Ins. Fund* v.

*Industrial Acc. Com.* [*Hutchinson*] (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902], we dealt with the problem of overlapping disabilities caused by injuries sustained in two separate industrial accidents. We there held that Labor Code section 4750[1] requires that the rating for the second injury be limited to the amount by which the total disability rating after the second injury exceeds the disability rating assigned to the first injury. "Stated another way, the disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete [in the open labor market] has been decreased from what it was immediately prior to the second injury. . . . If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 percent assigned to 'total' disability. [Citation.] But if the subsequent injury, even if to a different part of the body, does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration. [Citation.]" (*Id.* at p. 53.)

However, the instant case does not involve successive injuries or an application for benefits from the Subsequent Injuries Fund pursuant to Labor Code section 4750 et seq. "We find nothing in *Hutchinson* which states or intimates that the rule prescribed by section 4750 for *successive* injuries or the procedures approved in *Hutchinson* for rating such injuries, are applicable in the rating of disabilities for a *single* industrial injury." (Original italics.) (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* [*Rogers*], *supra,* 226 Cal.App.2d 136, 154.) Section 4750 was enacted to promote the employment of workmen partially disabled by a prior industrial accident (*State Compensation Ins. Fund* v. *Industrial Acc. Com.* [*Hutchinson*], *supra,* 59 Cal.2d 45, 49); that policy is inapplicable to cases involving a single industrial accident. Therefore, the special rating procedures found in *Hutchinson* to be appropriate for multiple accident cases, are not applicable here.

Furthermore, *Hutchinson* was concerned with the overlap of one permanent disability caused by one industrial accident with the permanent disability caused by another industrial accident. In the case at bench, we are concerned with an asserted overlap of two factors of disability which

---

[1]Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

comprise part of the permanent disability suffered by petitioner as a result of a single industrial accident. As we pointed out above, a permanent disability is a composite of all the factors of disability arising from a single industrial accident. The rating procedures established by *Hutchinson* for treating the overlap of composite permanent disabilities are not appropriate for treating the overlap of factors of disability which together comprise a single permanent disability.

■ We hold that in cases involving multiple factors of disability caused by a single industrial accident the Board must, in any instructions it may direct to the rating bureau, fully describe each separate factor of disability. Any overlap of the factors of disability thus described is adequately taken into account, and the pyramiding of disabilities is properly avoided, by application of the multiple disabilities rating schedule.

■ ■ Petitioner next contends that he was denied due process of law by the refusal of the Board to allow him to present rebuttal evidence at the supplemental hearing held on December 11, 1969. At that hearing, after the cross-examination of Drs. Thomason and Goldfarb, petitioner requested the opportunity to testify in rebuttal and to have Dr. Field testify in rebuttal. Because of the late hour, the referee felt that it was impractical to hear the rebuttal testimony then and decided to allow the Board to determine whether petitioner's motion for further proceedings to permit such rebuttal testimony should be granted. The Board denied the motion.

The Board contends that it was proper to deny the motion because petitioner had testified as to his disabilities at an earlier hearing and Dr. Field had submitted several reports which had been received in evidence. In addition, the hearing had been set at petitioner's request for the purpose of cross-examining Drs. Thomason and Goldfarb, and petitioner was given six weeks' notice of the date for which it was set. Yet it was not until the close of the cross-examination that petitioner requested the opportunity to testify or have Dr. Field testify.

However, as petitioner points out, his motion specified that his testimony would be limited to events which occurred with reference to his physical condition after his last testimony before the Board. During that period he had suffered a prolonged relapse of hepatitis, and his testimony as to that relapse would clearly seem relevant to Dr. Goldfarb's opinion that his condition had improved. Of course, testimony as to events which occurred after his last testimony would not be cumulative or a mere repetition of the former testimony.

Under the circumstances of this case, we cannot find that petitioner waived his right to present rebuttal testimony by his failure, prior to the

close of his cross-examination of Dr. Goldfarb, to request the opportunity to testify and to present Dr. Field's testimony in rebuttal. The notice for the December 11, 1969, hearing states that the hearing will be for the purpose of "cross-examination of Martin S. Goldfarb on his report of 9/30/69, *and to offer rebuttal."* (Italics added.) The Board's rules required no further notice of petitioner's intention to present his own and Dr. Field's testimony in rebuttal. This notice adequately informed the employer and insurance carrier of petitioner's intention to present rebuttal testimony. Furthermore, it appears that at the supplemental hearing held on June 12, 1969, which was set at petitioner's request for cross-examination of the rating specialist, he was allowed to testify in rebuttal despite the fact that he had not made a request to do so prior to the hearing. In the absence of a rule of the Board requiring that such a request be made prior to the hearing, petitioner reasonably believed that he would be allowed to testify as he had been on June 12, 1969. The record before us discloses no waiver by petitioner of his right to present rebuttal testimony at the hearing on December 11, 1969.

"The law is clear that undue infringement of the right to cross-examination [citations] as well as improper restrictions on the right to present evidence in rebuttal [citations] is a deprivation of the constitutional guaranty of due process of law." (*Pence* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 48, 50-51 [45 Cal.Rptr. 12, 403 P.2d 140]; *Caesar's Restaurant* v. *Ind. Acc. Com.* (1959) 175 Cal.App.2d 850 [1 Cal.Rptr. 97]; *Massachusetts etc. Ins. Co.* v. *Ind. Acc. Com.* (1946) 74 Cal.App.2d 911 [170 P.2d 36]; Lab. Code, § 5704.) While it is true that the Board need not permit the presentation of mere cumulative evidence (*Edgar* v. *Workmen's Comp. App. Bd.* (1966) 246 Cal.App.2d 660, 665 [56 Cal.Rptr. 37]; *Norris* v. *Workmen's Compensation Appeals Board* (1966) 31 Cal.Comp.Cases 364), the testimony which petitioner sought to present was clearly not cumulative, as has been pointed out above. Similarly, in some cases an applicant may be held to have waived his right to cross-examine or to present rebuttal evidence by his failure to make a timely request to do so (see *Star & Crescent Boat Co.* v. *Workmen's Compensation Appeals Board* [*Chiaia*] (1966) 31 Cal.Comp.Cases 203; *Davis* v. *Industrial Accident Commission* (1964) 29 Cal.Comp.Cases 1; *Hartford Accident & Indemnity Co.* v. *Industrial Accident Commission* [*Purcella*] (1964) 29 Cal. Comp.Cases 24; Cal. Admin. Code, tit. 8, §§ 10580, 10610, 10904), but here, as we have seen, petitioner's failure to request the opportunity to present rebuttal evidence did not constitute such a waiver. We hold that the Board erred in denying petitioner's motion to hold a further hearing to allow him to present his own testimony and the testimony of Dr. Field in rebuttal to the testimony of Dr. Goldfarb.

Finally, petitioner contends that the Board erred in its finding that "Applicant reasonably, actually, and necessarily incurred expense for medical reports to prove a contested case of the reasonable value of: $845.00 payable to Dr. Morton H. Field. . . ." The sum of $845 was the sum found by the referee to be the reasonable value of Dr. Field's services at the time the referee filed his decision. After the petition for reconsideration was granted Dr. Field performed additional services and in connection therewith filed, without objection from either party, notice and request for allowance of lien, stating that the value of his services rendered after the referee's decision was $1,131. The Board admits these facts and states that its failure to include the $1,131 figure in its award was the result of a clerical error and inadvertence. As this case must be remanded in any event, we assume that the Board will adjust its award appropriately to reflect the proper value of the services rendered by Dr. Field.

The opinion and decision after reconsideration given and made under date of February 11, 1970, is annulled and the case is remanded to the Workmen's Compensation Appeals Board with directions to take such further proceedings as may be necessary in accordance with this opinion.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.