[No. A056319. First Dist., Div. Five. Oct. 1, 1992.]

DENNIS PARKER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and FREMONT
POLICE DEPARTMENT, Respondents.

**COUNSEL**

Raymond E. Frost for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, Kenneth J. Dorman and Virginia L. Draney for Respondents.

## OPINION

**WALKER, J.**\*—In this case, we hold that two successive, specific industrial injuries—one solely to the left knee and one solely to the right knee—sustained by petitioner Dennis Parker (applicant) do not entitle him to a single combined permanent disability (PD) rating under *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848] (*Wilkinson*), because the injuries were not to the same part of the body as required by *Wilkinson*, even though they became permanent and stationary at the same time.

Applicant respectively seeks review of the opinion and order of respondent Workers' Compensation Appeals Board (Board), contending that the Board erred in failing to apply *Wilkinson* and award one overall PD rating at the PD rates in effect in 1983 where applicant's knee disabilities, when combined, produce a single work restriction. We disagree.

The facts are not in dispute. Applicant was employed as a police officer by respondent City of Fremont Police Department (FPD). On February 22, 1982, he sustained a specific industrial injury to his left knee. He underwent surgery in May 1982 and returned to work in October 1982. On October 29, 1983, he sustained a specific industrial injury to his right knee, which also resulted in the need for surgery in April 1984. Applicant was retired from the FPD on July 13, 1984. In June 1985 applicant underwent a second left knee surgery. All benefits were provided. The sole issue before the Board was the method of rating applicant's PD. The question before this court is strictly one of law.

I

Where successive injuries to the *same part of the body* become permanent and stationary[1] at the same time, the injured employee is entitled to a PD award based upon his or her combined disability at

---

\*Judge of the Napa Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]"A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 9735.) Termination of temporary disability status is not determinative of permanent and stationary status per se because it considers solely the injured employee's ability to work. (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355];

the PD rates applicable at the time the last injury of the successive injuries giving rise to such benefits occurred. (*Wilkinson, supra,* 19 Cal.3d at p. 494; *Fremont Indemnity Co. v. Workers' Comp. Appeals Bd.* (1989) 208 Cal.App.3d 914, 917-918 [256 Cal.Rptr. 413]; *Rielli v. Workers' Comp. Appeals Bd.* (1982) 134 Cal.App.3d 721, 724 [184 Cal.Rptr. 825] [*Rielli*]; *Liberty Mut. Ins. Co. v. Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 265, 272 [173 Cal.Rptr. 349] [*Volomino*]; *Norton v. Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 618, 625-628 [169 Cal.Rptr. 33] [*Norton*]; *Harold v. Workers' Comp. Appeals Bd., supra,* 100 Cal.App.3d 772, 784-786 [*Harold*]; *Fullmer v. Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 164, 166 [157 Cal.Rptr. 735] [*Fullmer*]; *Taylor v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 139, 146-148 [156 Cal.Rptr. 906]; *Nuelle v. Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239, 243-245 [154 Cal.Rptr. 707]; *Rumbaugh v. Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907, 914-916 [151 Cal.Rptr. 563]; *Aten v. Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 118 [142 Cal.Rptr. 42]; *Bauer v. County of Los Angeles* (1969) 34 Cal.Comp.Cases 594 [Board en banc opn.].)

## II

On May 9, 1991, the instant case proceeded to hearing before WCJ Robert Laws at the Oakland Board. Applicant was a maximum wage earner for the purposes of calculating his PD indemnity. (See Lab. Code, § 4658.) The parties stipulated that if *Wilkinson* were not applied, separate PD ratings would be as follows: (1) for the left knee injury, 38 percent, totaling $11,812.50, payable at the 1982 PD rates; and (2) for the right knee injury, 21½ percent, totaling $10,140, payable at the 1983 rates.[2] The parties further stipulated that if *Wilkinson* were applicable, applicant's combined PD rating for both knee injuries would be 60 percent, which is the monetary equivalent of $40,430 under the 1983 PD rates.

On September 16, 1991, the WCJ issued his decision, addressing only the issue regarding whether applicant's condition became permanent and stationary at the same time. Concluding that it did, the WCJ held that *Wilkinson*

accord *Harold v. Workers' Comp. Appeals Bd.* (1980) 100 Cal.App.3d 772, 785 [161 Cal.Rptr. 508].) Rather, permanent and stationary status refers to medical rehabilitation. (*Ibid.*) Thus, an injured employee may be fully capable of working and his or her medical condition not yet permanent and stationary. (*Ibid.*)

Here, the issue of when applicant's injuries became permanent and stationary is not before us. We note that the Board on reconsideration did not disturb the Workers' Compensation judge's (WCJ) determination that applicant's injuries in fact were permanent and stationary at the same time.

[2]Effective January 1, 1983, the Legislature raised PD rates from a weekly maximum of $70 to $130. (Lab. Code, § 4453, subd. (b)(1).) As an example of the significance of the PD rate change to the instant matter, if applicant's 1982 left knee injury had occurred in 1983, the separate 38 percent PD rating, without application of the *Wilkinson* doctrine, would be the monetary equivalent of $21,937.50, a difference of $10,125.50.

applied. The WCJ did not discuss whether successive injuries to the left and right knees respectively were injuries to the same part of the body. Accordingly, applicant was awarded one combined PD rating for both injuries in the amount of $43,540.[3]

On October 11, 1991, FPD sought reconsideration. FPD argued that successive left and right knee injuries were not to the same part of the body as required by *Wilkinson*. FPD also argued that applicant's condition did not become permanent and stationary at the same time.

In his report and recommendation on reconsideration to the Board dated November 4, 1991, the WCJ did not address FPD's argument that applicant's injuries involved different parts of the body. The WCJ's sole responsive comment was: "The contention that serial bilateral knee injuries are not subject to the *Wilkinson* calculation is without merit as it is not supported by citation to authority or by argument."

### III

On December 9, 1991, the Board granted reconsideration and issued its opinion. In the absence of evidence that applicant had sustained bilateral knee injuries in each case, held the Board, *Wilkinson* does not apply because the successive injuries were not to the same part of the body. The Board rescinded the WCJ's combined PD award of 60 percent, issuing separate PD awards for each injury (38 percent and 21½ percent) pursuant to the parties' stipulations set forth above. As a result, applicant's monetary recovery was reduced by $18,477.50

The Board distinguishes *Wilkinson* factually, emphasizing that employee Wilkinson's two successive knee injuries each involved *both* knees. *Fullmer, supra*, 96 Cal.App.3d 164, which applies *Wilkinson* to successive knee injuries, is cited by the Board. In *Fullmer*, the successive injuries were to the injured employee's right knee only. Although germane, *Fullmer* is not directly on point.

A Second Appellate District writ-denied case, *Powerline Oil Co.* v. *Workers' Comp. Appeals Bd.* (1982) 47 Cal.Comp.Cases 1163 (*Powerline*), also is relied on by the Board. However, the Board erroneously indicates that the injured employee in *Powerline* sustained successive bilateral knee injuries

---

[3]In the WCJ's report and recommendation on reconsideration, the WCJ indicated that the $43,540 was a clerical error because it represented PD for an injury occurring after January 1, 1984. (See Lab. Code, § 4453, subd. (b)(2).) Accordingly, the WCJ recommended a reduction of the PD award to the appropriate 1983 rate of $40,430.

when in fact the first injury was to the right knee and the second one to the left knee. (*Id.*, at p. 1164.) As discussed *post*, this error has no effect on our decision herein. (See *post*, fn. 6.)

Without elaboration, the Board further relies on a First Appellate District, Division One case, *Rielli, supra,* 134 Cal.App.3d 721. Lastly, the Board notes two prior Board panel decisions where successive injuries which became permanent and stationary at the same time did not warrant a combined PD rating because the injuries were not to the same part of the body. (See *Mowrey* v. *Workers' Comp. Appeals Bd.* (1983) 48 Cal.Comp.Cases 99, writ den. Feb. 24, 1983; *Menke* v. *Workers' Comp. Appeals Bd.* (1980) 45 Cal.Comp.Cases 208, writ den. Mar. 4, 1980.)

## DISCUSSION

■ The specific issue before this court is whether the *Bauer-Wilkinson* doctrine extends to successive, separate injuries to different parts of the body where those parts are anatomically and functionally related and the injuries become permanent and stationary at the same time, combining to produce a single work restriction, i.e., PD rating.

Initially, it is noted that *Wilkinson* is easily distinguished because the successive injuries in question were bilateral, i.e., *both* knees were injured simultaneously each time. Thus, "the same part of the body" in fact was injured in each successive injury at issue in *Wilkinson*. Although there are no appellate decisions subsequent to *Wilkinson* directly on point to the instant issue, three published decisions do scrutinize the "same part of the body" requirement. Each of these cases, to be discussed within the context of applicant's contentions, unequivocally establishes that *Wilkinson* does not apply herein where the successive injuries occurred to different parts of applicant's body.

### NORTON

Without expounding, applicant cites *Norton, supra,* 111 Cal.App.3d 618, as authority for the premise that the *Wilkinson* rule has been expanded to include successive injuries to different parts of the body. Interestingly, Hanna, in his workers' compensation treatise, citing *Norton*, also proclaims without explanation that expansion of the *Wilkinson* rule includes "successive injuries to different parts of the body." (See, 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d rev. ed. 1992) § 8.07[2][d], p. 8-45, citing *Norton, supra,* at pp. 625-626.) Hanna and applicant both erroneously interpret *Norton*.

In *Norton*, the injured employee was employed as a deputy sheriff by the County of Santa Barbara from July 22, 1968, until November 9, 1977. He sustained five separate industrial injuries as follows: (1) a specific back injury on July 26, 1971; (2) a specific back injury on May 20, 1975; (3) a specific back injury on November 3, 1977; (4) a cumulative back injury from July 22, 1968, through November 9, 1977; and (5) a cumulative stomach injury from 1974 through November 1977. (*Norton, supra,* 111 Cal.App.3d at p. 622.)

Without challenge, *Wilkinson* applied to allow for one combined PD rating for the three specific and one cumulative back injuries. (*Norton, supra,* 111 Cal.App.3d at p. 625.) The dispute, however, involved the proper rating method for the four combined back injuries and the cumulative stomach injury. The specific issue was whether the combined back injuries and the cumulative stomach injury should be rated together, according to the WCJ's formula, as multiple factors of disability to different parts of the body resulting from a *single* injury pursuant to *Hegglin v. Workmen's Comp. Appeals Bd.* (1971) 4 Cal.3d 162, 174 [93 Cal.Rptr. 15, 480 P.2d 967] (*Hegglin*); or apportioned, according to the Board's formula, as successive "overlapping disabilities" pursuant to *Mercier v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711 [129 Cal.Rptr. 161, 548 P.2d 361], and *State Compensation Ins. Fund v. Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902].

On review, the appellate court annulled the Board's apportioned PD ratings, emphasizing that "[h]ere, the difficulty is that we do not deal with only *successive* injuries but *contemporaneous* injuries as well." (*Norton, supra,* 111 Cal.App.3d at p. 627, italics in original.) Employee Norton's cumulative back and stomach injuries were contemporaneous, determined the court, because the ending dates for both of the cumulative injurious exposure periods were the same. The beginning dates, however, were not. "In order for injuries to be successive, one injury must predate the other." (*Ibid.*) Thus, reasoned the court, the cumulative back and stomach injuries were *not* successive. Under those particular circumstances, the court concluded that the four back injuries were rated together correctly under *Wilkinson*. It then held under *Hegglin* that the cumulative back and stomach injuries also be rated together. (*Norton, supra,* at p. 629.)

*Norton* is distinguished from the matter before this court. The principles enunciated in *Hegglin* were violated by the Board in *Norton*. The court had to reconcile the PD rating with *Hegglin*, not *Wilkinson*, when rating the additional stomach disability. Once it determined that the cumulative back and stomach injuries were *not* successive, but only contemporaneous, *Wilkin-*

*son* was immaterial. The *different* parts of the body (back and stomach) were not rated pursuant to *Wilkinson*. The combined back disabilities and stomach disability were rated as multiple factors of disability *to different parts of the body* arising from *one* injury in accord with *Hegglin*. (*Norton, supra,* 111 Cal.App.3d at p. 629.)

Consequently, applicant's reliance on *Norton* in the matter before us is decidedly misplaced. Notwithstanding the result reached in *Norton*—one overall PD award producing a higher rate of PD—as if *Wilkinson* had governed the PD rating process entirely, *Norton* does not extend application of *Wilkinson* to include successive injuries to different parts of the body.

HAROLD

Turning to *Harold, supra,* 100 Cal.App.3d 772, applicant asserts that when determining whether injuries are to the same parts of the body, the relevant inquiry is not which parts of the body were initially injured but which parts of the body are causing the PD. (*Id.,* at p. 786.)

In *Harold,* the injured employee sustained two industrial injuries: (1) in 1971, she injured her "right major upper extremity and right lower extremity"; and (2) in 1973 she injured only her "right lower extremity." (*Harold, supra,* 100 Cal.App.3d at p. 775.) A number of issues not pertinent herein were involved in *Harold.* Relevant to the matter herein, the Board in *Harold,* when assessing the PD, determined that one of the reasons *Wilkinson* did not apply was because both injuries did not involve "totally identical parts of the body." (*Harold, supra,* at p. 784.)

On review, the appellate court annulled the Board, emphasizing that there was *no* PD associated with the 1971 right upper extremity injury. The PD at issue resulting from both injuries involved *only* the right lower extremity. The court opined: "Thus, what matters is not necessarily what parts of the body were involved in the injuries but rather what parts of the body are causing the [PD]. Here, only the 'right lower extremity' is involved in the [PD]. *Wilkinson* can therefore be applied." (*Harold, supra,* 100 Cal.App.3d at p. 786.)

Here, *Harold* unmistakably does not extend *Wilkinson* to allow for a combined rating for successive injuries solely to each knee, where neither involved the other in any way. To the contrary, *Harold* attests to the maxim that application of *Wilkinson* when rating PD is limited to successive injuries "to the same part of the body." (1 Herlick, Cal. Workers' Compensation Law (4th rev. ed. 1991) § 7.46, p. 7-65, citing *Harold, supra,* 100 Cal.App.3d 772, and *Rielli, supra,* 134 Cal.App.3d 721.)

RIELLI

In *Rielli, supra,* 134 Cal.App.3d 721, Division One of this court granted review to examine "an unusual factual situation" arising under *Wilkinson.* (*Rielli, supra,* at p. 723.) Ultimately, the court annulled the Board's decision, concluded that the evidentiary record was insufficient, and remanded the matter for further findings. Although overlooked by applicant and cited by the Board without discussion, *Rielli* is instructive.

Turning to the facts, employee Rielli, a plumber and steamfitter, sustained a specific neck and low back injury in 1972. Medical attention in 1972 and 1973 focused on the neck, and Rielli underwent neck surgery in 1973. Rielli did return to work for numerous employers and his back symptoms gradually worsened. In 1978, he filed a back claim, alleging cumulative injury covering the entire course of his employment from 1972 to 1978. The cumulative injury was not disputed. The WCJ found that the 1972 injury resulted in a 19 percent PD and that the subsequent cumulative injury resulted in an additional 19 percent PD. However, pursuant to *Wilkinson,* the WCJ combined the disabilities for rating purposes and issued one overall PD rating "for reasons of purely perceived equity and fairness." (*Rielli, supra,* 134 Cal.App.3d at p. 726.)

The Board granted reconsideration, and took testimony from the rating specialist that for rating purposes the neck and back are considered to be the same part of the body. (*Rielli, supra,* 134 Cal.App.3d at p. 726.) In its decision, however, the Board refused to apply *Wilkinson* and issued two separate ratings, holding that the two injuries did not become permanent and stationary at the same time. In light of this, the Board found it unnecessary to decide whether the injuries involved the same part of the body. (*Rielli, supra,* at p. 726.)

On review, the court annulled the Board's decision, concluding that it was "entirely satisfied that this record lacks substantial evidence to support the board's conclusions" that Rielli's injuries were not permanent and stationary at the same time for purposes of applying *Wilkinson.* (*Rielli, supra,* 134 Cal.App.3d at p. 727.) Nonetheless, the court remanded the case for further findings because "by focusing upon the evanescent difference in 'permanent and stationary' dates, the [B]oard sought to escape the difficult question of whether the two injuries at hand involved the same part of the body. [¶] We conclude, however, that this is the determinative issue in the case. Since we lack the expertise to decide the question independently and the present record is insufficient to supply us with the information necessary for such a

decision, we accordingly direct the [B]oard and its rating bureau to determine on remand whether [Rielli's] injuries involved the same part of the body." (*Ibid.*)[4]

We interpret *Rielli* to stand for the principle that *Wilkinson* may apply to disabilities which result from successive injuries to technically different parts of the body where, for PD rating purposes, the injuries are treated as the same part of the body. Here, *Rielli* is distinguished on two grounds. First, Rielli's neck and low back injuries were injuries to his spinal cord. He did not sustain successive injuries to different limbs. Second, in the schedule for rating permanent disabilities under provisions of the Labor Code (Rating Schedule), the disability number for spinal injuries is 18, and it is subdivided into sections, as follows: (1) 18.1 involves "Impaired Function of the Neck, Spine, or Pelvis" and categorizes the disabilities as "slight," "moderate" or "severe," (2) 18.3 involves "Spinal Cord Injuries Causing Paralysis" and categorizes the disability levels in terms of paralysis of both extremities or incontinence of feces and urine. (Rating Schedule, p. 13.) Whether an injury is to the neck or any part of the back, there is no differentiation for injuries to the spinal cord. Neck and back injuries are treated as one and the same for PD rating purposes.

In contrast, injuries to the knees are not treated as the same part of the body for rating purposes. In comparison to the Rating Schedule's designations for spinal disabilities, knee disabilities are one of several lower extremity disabilities subdivided under disability number 21, according to whether an injury occurs to either "one" or "both" knees. (Rating Schedule, pp. 14-15.) Thus, the Rating Schedule provides a process for rating separately, if necessary, injuries to different knees. *Rielli*, therefore, does not require application of *Wilkinson* for PD rating purposes to the facts presented herein and, in fact, dictates the opposite.

In summary, *Norton, Harold,* and *Rielli* share a common theme recognizing appropriately a major premise of *Wilkinson* that is absent in the instant case. Specifically, because the successive injuries in *Wilkinson* were to the same part of the body and did not become permanent and stationary at distinctly different times, it was impossible or impracticable from an evidentiary standpoint to factually and legally establish apportionment. (*Wilkinson, supra,* 19 Cal.3d at pp. 497-500.) It is, therefore, the interaction of injuries to the *same part of the body* that serves as the primary, indispensable foundation of the *Bauer-Wilkinson* line of cases. As stated by the Supreme Court: "[T]he interaction between the injuries may make apportionment of disability im-

---

[4]Here, the Board confirms as follows: "In *Rielli*, the disability evaluation specialist testified that, for rating purposes, the neck and back are considered to be the same part of the body."

possible or inequitable. The second injury may prevent the first from healing properly, converting that which would have been a temporary disability into a permanent disability; the first injury may render the injured part of the body unusually weak or sensitive and thus contribute to the damage caused by the second." (*Wilkinson, supra,* at p. 499.) Here, the record is replete with evidence that the disabilities, although they became permanent and stationary at the same time, can be and were separated. We do not confront a *Wilkinson* situation because applicant's successive injuries, albeit involving only his knees, were in fact to different parts of his body, thus making it possible to apportion.[5]

POWERLINE

Citing the Board panel decision in *Powerline, supra,* 47 Cal.Comp.Cases 1163, applicant asserts that *Wilkinson* has been expanded in successive injury cases to cover certain disabilities that, although technically not affecting the same part of the body, cannot be separated for purposes of rating PD. The gravamen of applicant's argument is that any time successive injuries combine to produce a *single* work restriction the PD should be rated according to *Wilkinson,* assuming the other threshold requirements are met. We disagree.

■ Turning to *Powerline, supra,* 47 Cal.Comp.Cases 1163, a Board panel decision, we note that, although properly cited for appellate consideration, we are not bound by a writ-denied Board panel decision (see *Wings West Airlines* v. *Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4 [232 Cal.Rptr. 343]); nor do we find *Powerline* persuasive.

■ In *Powerline,* the injured employee, Steward, sustained an injury to his right knee on April 22, 1977, and four days later on April 26, 1977, an injury to his left knee. (*Powerline, supra,* 47 Cal.Comp.Cases at p. 1164.)[6] In October 1978, it was reported by a medical examiner that "Steward's knee conditions were permanent and stationary and that as a result of the combined effect of both knee injuries, Steward was limited to between light and semisedentary work." (*Ibid.*) In May 1979, another medical examiner reported that "because of Steward's 'bilateral knee injuries,' he was precluded

---

[5]It is immaterial to our decision that the parties stipulated to an apportionment of PD between the two injuries. The determinative issue is whether the Board could make such an apportionment based upon the evidence before it, which *Wilkinson* recognizes as impossible or impracticable where successive injuries to the same part of the body become permanent and stationary at the same time. (*Harold, supra,* 100 Cal.App.3d at p. 784; *Aten* v. *Workers' Comp. Appeals Bd., supra,* 75 Cal.App.3d at p. 119.)

[6]In its opinion herein, the Board states in reference to *Powerline* that the "WCJ had found that the applicant had sustained industrial injury to his right and left knee *in each case.*" (Italics in original.) The Board simply misstates the facts. However, this error is inconsequential to the result reached by this court.

from prolonged standing and walking." (*Ibid.*) Although both doctors had histories of the specific injury to each knee, there was no attempt at any time to break down the overall disability into separate partial permanent disabilities. Certainly, the proximity in time of the two injuries was important. The Board stated that the knee injuries were impossible to separate because they combined to create the single work limitation imposed by the doctor. (*Ibid.*) Thus, to the extent that *Powerline* is viable precedent, we narrowly construe it. Clearly, the Board treated the employee's two knee injuries as a single injury, rather than successive, separate injuries to different parts of the body.

Here, in contrast, applicant's injuries were separated in time by more than one and one-half years. There is ample evidence in the record that applicant's two knee injuries could be separated for purposes of assessing his PD. While this evidence alone might not preclude application of *Wilkinson* under other circumstances, on this record it does not override the Supreme Court's mandate that application of *Wilkinson* requires successive injuries to the same part of the body. *Powerline* neither extends *Wilkinson*, nor does it obliterate *Wilkinson*'s long-standing threshold requirement that successive injuries must occur to the same part of the body.

## CONCLUSION

The Board correctly awarded applicant separate PD ratings for each knee injury, declining to apply *Wilkinson* because applicant did not sustain successive injuries to the same part of his body. Accordingly, the Board opinion and order dated December 9, 1991, is affirmed.

King, Acting P. J., and Haning, J., concurred.