[Civ. No. 5838. First Appellate District, Division One.—April 19, 1927.]

PACIFIC EMPLOYERS' INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, and MAE WOLAND et al., Respondents.

[1] Workmen's Compensation Act — Partial Dependency — Death Benefit — Uncollected Wages — Statutory Construction.— The provisions of the Workmen's Compensation Act that in the event a deceased employee leaves one or more persons partially dependent "the said dependents shall be allowed . . . a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent," and that dependency "shall be determined in accordance with the fact that at the time of the injury," are not to be narrowly construed to deprive the dependents of the benefits of moneys earned by the deceased prior to his death, but which neither he nor they had yet received.

[2] Id.—Measure of Loss—Rate of Contribution.—In such a case, in determining the annual rate or extent of contribution, it is the rate which is the measure of the loss, not the gross amount which the deceased has happened to pay through any past year, or through any other period of time.

---

2. See 27 Cal. Jur. 544.

[3] ID.—INTENT—DISCRETION OF COMMISSION—FINDINGS—CERTIORARI. In such a case, the determination of questions as to the annual rate or extent of contribution and as to the intent of the deceased to contribute to the dependents, out of the moneys earned and not received by him at the time of death, the same percentage of such moneys as he had contributed from previous earnings, is left to the discretion of the Industrial Accident Commission, and its findings are not reviewable where there is any evidence to support them.

[4] ID.—USE OF AUTOMOBILE BY DEPENDENTS—PURCHASE OF SUPPLIES BY DECEASED.—In such a case, where the dependents lived outside the city limits, and they owned an automobile which they used as a means of transportation in going to and from the city to provide for their various wants, the purchase by the deceased of supplies for said automobile was as much a contribution as though the cost of the same had been given directly to the dependents and by them expended for the necessary articles.

(1) Workmen's Compensation Acts, C. J., p. 100, n. 73.    (3) Workmen's Compensation Acts, C. J., p. 122, n. 40.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

W. R. Millington for Petitioner.

G. C. Faulkner for Respondents.

TYLER, P. J.—*Certiorari* to review the lawfulness of an award made by the Industrial Accident Commission.   The pleading contains the usual recitals to the effect that petitioner is engaged in issuing employers' liability and workmen's compensation insurance and that it is the insurance carrier for the Kaiser Paving Company.   It then alleges that an employee of the insured company met with an accident resulting in death, for which an award was made by the Industrial Accident Commission.   It is claimed that in making such award the Commission acted in excess of its power or jurisdiction; that the evidence does not justify or support the findings or decision; that it is unreasonable,

3.   See 28 R. C. L. 828.
4.   See 27 Cal. Jur. 542.

and unless the same is set aside, petitioner will be compelled to pay the same and thus be deprived of its property without due process of law, there being no appeal from such decision.

It appears from the record that one Edward Thatcher, a minor, of the age of eighteen years, was employed by the Kaiser Paving Company of Vallejo, as a time-checker. His duties consisted in checking employees' working time, for pay-roll records. On August 17, 1925, while riding on the steps of a truck, he was jolted off, the truck running over him, crushing his chest and causing immediate death. Deceased left surviving him his mother, a half-brother who was a minor, and Henry H. Kinsey and Harriet E. Kinsey, his grandparents, all of whom were partially dependent upon him for support. The Commission found that the annual rate of contribution by deceased to their support was the sum of $735.84, entitling said dependents to a death benefit in the sum of $2,207.52, payable in weekly installments of $16.67, beginning as of August 18, 1925. It further found that claimants were entitled to a further award of $150, burial expenses. The weekly payments were based upon wages of $4.50 a day for employment of six days a week. It was stipulated that the injury arose out of and in the course of employment. It is not disputed that the deceased contributed partially to the support of all the members of his family, except his stepfather, who was the main provider. It is insisted, however, that in fixing the rate of compensation the Commission included certain items as contributions which the evidence shows were not in fact such, and should, therefore, not have been considered in ascertaining the extent of the dependency. Such of the facts as are necessary for a discussion of the issues presented show that one Mae Woland married her present husband in the year 1915. The deceased was a child by a former marriage. A few months prior to his death Henry H. Kinsey and Harriet E. Kinsey, the aged parents of Mrs. Woland, came to live with her. They were without funds and had no means of support. The Wolands were themselves poor and it was necessary for the son to render such assistance as he was able. About a year prior to his death he was attending part-time high school and devoting the remainder of his time to such work as he could procure. He sold

papers and at times drove a truck. The mother had purchased a lot outside the city limits of Vallejo, and for a time she and the family lived in a tent on the premises. The tent being inadequate for the family needs, the husband undertook to erect a structure upon the lot. At the time of the death of her son, lack of funds had prevented its completion. The scantlings on the inside were exposed and the outside of the building was unfinished, being covered with tar paper. The family, however, moved into the building, making the best of the situation. They owned some chickens and cows, but derived small benefits therefrom. Considering the distance from the town, it was necessary for them to have some means of transportation in going to and from the city to provide for their various wants, and they owned an automobile which was used for this purpose. Under these circumstances the deceased started to render such assistance as he could. He succeeded in procuring the employment which resulted in his death.

The Commission, in fixing the rate of contribution to his dependents, took the first period of employment from July 20th to July 31st, inclusive, and found the earnings of the employee to be the sum of $29, exclusive of board and room. Of this sum the employee had drawn $5 for his own personal use, making no contribution therefrom to any of his dependents. On July 31st he received the balance of $24, and out of this sum he gave his mother $12.50 in cash and bought a tire for the automobile costing the sum of $19.90. For this period, then, if the cost of the tire be included, he contributed the sum of $23.40, which is 80.69 per cent of the total amount earned. The balance of the $5.60 he retained for his own personal use. In the next period of employment from August 1st to August 15th, inclusive, he earned $47 net above board and room. During this period, on August 8th, he drew advance wages of $10. Out of this sum he gave his mother $7.50 in cash and he purchased oil and gas for the automobile amounting to the sum of $4.90. On August 15th he had $37 balance in wages coming to him at the end of the day's work. On the following day he requested payment of this sum from his employer, expressing his intention of taking it to his mother. His request was refused and he was informed that the company had concluded to make payments thereafter on

82 Cal. App.—27

the regular pay-days only, which were fixed on the 5th and 20th of each month. He thereupon left the office for his home and on his arrival he informed his mother of his effort to procure the money and the refusal of the company to pay. The following day he met his death in the manner above indicated. The Commission, in fixing the rate of his contributions, concluded it was reasonable to assume, notwithstanding the evidence that the deceased intended to contribute the entire balance of $37 due him to his mother, that he would need for his own personal use a portion thereof. It found that as it was established that deceased had contributed $80.69 per cent of his wages from the first period of his employment that it would be reasonable to assume that his contributions would be limited to this percentage. For this reason the Commission took 80.69 per cent of his total earnings of $47 for the second period of employment, which amounts to $37.92, to which was added $23.40, the amount contributed from the first period, making $61.32 as the total monthly amount contributed as fixing the annual rate. It is petitioner's contention that the amount expended by the deceased for oil, gasoline, and the tire should not have been considered by the Commission in fixing the annual rate or the extent of contribution. [1] It likewise contends that the Commission erred in taking into consideration the amount of wages due deceased and remaining unpaid, and which were not received by the mother until after the death of the employee. Under this contention it is claimed that an *intention* to contribute can form no basis in fixing an annual rate of contribution; that the evidence should be confined solely to the *actual* money so devoted. This contention requires a construction of the provisions of the Workmen's Compensation Act relating to the subject. These provisions are to be found in chapter 586, Laws of 1917, as amended in 1925 (Stats. 1925, p. 643). They read as follows: "In case the deceased employee leaves no person wholly dependent upon him for support, but one or more persons partially dependent therefor, the said dependents shall be allowed the reasonable expenses of his burial, not to exceed one hundred and fifty dollars, and, in addition thereto, a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent," etc. Sec-

tion 14 (b) provides that the question of entire or partial dependency and the question as to what constitutes dependents, together with the extent of dependency, shall be determined in accordance with the fact, as the fact may be at the time of the injury of the employee. Our attention is directed to the language of the statute, which provides "that the death benefit amounting to three times the annual amount *devoted by the deceased to the support*," etc., and dependency "shall be determined in accordance with the fact *at the time of the injury*," and it is urged that as the amount due the employee at the time of his death had not been so devoted at such time, it should not have been considered by the Commission in fixing the rate. We do not consider there is any merit in this contention. The narrow construction contended for would, if adopted, in many cases defeat the plain intent of the law. In *Spreckels* v. *Industrial Acc. Com.,* 186 Cal. 256 [199 Pac. 8], it is said that the whole theory of the Compensation Act as to the death causes is that the dependents of the employee shall be compensated for the loss of the support they were receiving from him at the time of the injury; that this necessarily means that the death benefit must be computed at the rate of contribution at that time. [2] It is the rate which is the measure of the loss, not the gross amount which the deceased has happened to pay through any past year, or through any other period of time. It is there further said that the rate of contribution at the time of the injury is by no means determined by the contributions made during the last month of the employee's life. There may have been no contributions in the last month. The employee may have been contributing in quarterly installments, and the last month may not have happened to be a month of payment. But there would, nevertheless, be a rate of contribution existing as of the date of the injury. It is the rate that the Commission must determine from all the facts in the case. See, also, *Great Western Power Co.* v. *Industrial Acc. Com.,* 196 Cal. 593 [238 Pac. 662]. In *Hartford Accident & Indemnity Co.* v. *Industrial Acc. Com.,* 197 Cal. 17 [239 Pac. 330], the following language is used: "The evidence, however, is open to the inference that, except for the death of her brother, the condition of dependency might have continued indefinitely." These cases seem to indicate

that the Commission has power to accept and take into consideration the "intent" of the employee in fixing the rate. Decisions are not wanting upon the subject. In *Freeman's Case,* 233 Mass. 287 [123 N. E. 845], the question presented for determination was that of dependency. There it appeared that a boy sixteen years of age, having a partially dependent mother, was killed during the period of his last employment. He had worked but two days prior to the accident which resulted in his death. Upon leaving his home in search of employment he had promised his mother that he would send her all his earnings except the portion needed for his actual necessities. As he was killed before his first pay-day he had sent none home. The Commission made a finding based upon his wages and it was held that while a simple expression of purpose to contribute to support, unaccompanied by any actual contribution, without reasonable opportunity, would not constitute a finding of partial dependency, still the Commission having found that deceased made previous contributions out of his employment, such evidence was sufficient to support the conclusion that deceased was sincere in his promise. To the same effect is *Gregory* v. *Standard Oil,* 151 La. 228 [91 South. 717]. In this case claim was made for benefits under an act providing for compensation to those actually dependent "at the time of injury or death." The quoted phrase was held not to be limited to the very moment of the death of the employee, but to cover a reasonable period prior thereto as well as a reasonable expectation of assistance during the continuance of the employee's life. As here, deceased was a minor son who had contributed to the support of his mother. He had left home to seek new employment and had promised his mother that he would send to her a stated amount each month. The court, in upholding the award, held that the reputation which the son had earned as attested by his neighbors, and exemplified in his devotion to his parents, and the faithful discharge of his filial duty, gave his parents every reason to expect the redemption of his promise, which could be considered by the board in determining the amount of the award. To the same effect is *Illinois Steel Co.* v. *Industrial Com.,* 308 Ill. 466 [139 N. E. 921]; *Tintic Min. Co.* v. *Industrial Com.,* 60 Utah, 261 [207 Pac. 1114]. In the case last cited it is said

that the question is not whether contributions were made at regular intervals, but whether they were made for the purpose of continued support; whether at the time of the injury resulting in the death of the contributor the facts indicate that the contributions would have continued had the death of the employee not occurred. [3] The determination of questions of this character is wisely left to the discretion of the Commission, and its findings are not reviewable where there is any evidence to support them. See, also, *Pittsburg, C. C. & St. L. Ry. Co.* v. *Collard's Admr.*, 170 Ky. 239 [L. R. A. 1918E, 273, 185 S. W. 1108] ; *Ex parte Woodward Iron Co.*, 211 Ala. 111 [99 South. 649].

The statutes which the courts were considering in the cases cited were in all respects similar to ours. We conclude upon the subject that all the facts and circumstances, together with the reasonable inferences to be drawn therefrom, were sufficient to justify the Commission in its conclusion as to the extent of the contributions made by the deceased to his dependents. [4] We are of the further opinion that the purchase by the deceased of the supplies for the automobile, considering the uses to which the machine was put, was as much a contribution as though the cost of the same had been given directly to the mother and by her expended for the necessary articles. The amount was devoted to the use of the dependents.

The award is affirmed.

Knight, J., and Cashin, J., concurred.

An application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1927.