[No. A034754. First Dist., Div. Three. Dec. 11, 1986.]

WINGS WEST AIRLINES et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
DEPARTMENT OF INDUSTRIAL RELATIONS, Respondents.

1048

**COUNSEL**

James J. Moriarty, Daniel G. Yohman and Ferrari & Yohman for Petitioners.

James D. Fisher for Respondents.

**OPINION**

**BARRY-DEAL, J.**—The employer, Wings West Airlines (Wings West), and its workers' compensation carrier, Transport Insurance Company (col-

lectively employer), timely seek review of an order of the Workers' Compensation Appeals Board (Board) after reconsideration, finding that since the sister of the deceased employee had not qualified as a partial dependent (Lab. Code, § 3502),[1] an amount equal to the total dependency death benefit ($70,000) was payable to respondent, the Director of the Department of Industrial Relations, as Administrator of the Non-Dependent Death Unit (Director), pursuant to section 4706.5.[2] We affirm the order.

The employer and state agreed to and accepted as uncontroverted the following facts. The employee, Paul Nebolon, born in 1956, was employed in California by Wings West as a pilot when he sustained injuries arising out of and in the course of his employment that resulted in his death on August 24, 1984. His sister, Denise Luckenbach, who lived in Bend, Oregon, had separated from her husband of six years and had custody of their children. Her house payments were $450 per month. After the separation but before Nebolon's death, Luckenbach's estranged husband voluntarily agreed to provide $200 a month child support and no more. At the time of the separation, Luckenbach had been voluntarily unemployed for three years.

Nebolon learned about the separation of Luckenbach and her husband. In a telephone conversation in July, Nebolon promised to help Luckenbach but did not specify any amount. At Nebolon's funeral, Luckenbach learned from her mother that Nebolon had told their parents he planned to contribute $135 a month. Luckenbach did not receive any monies from Nebolon before his death. Nebolon had scheduled a visit to his sister for the weekend after he was killed.

The depositions established that Nebolon had no dependents. Nebolon maintained close contact with his sister and was close to his entire family.

The workers' compensation judge (WCJ), relying on *Union Lumber Co.* v. *Industrial Acc. Com. (Matthews)* (1942) 7 Cal.Comp.Cases 178 (writ

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]So far as pertinent, section 4706.5 provides that only where an employee entitled to the death benefit leaves no dependents, the employer shall pay an amount equal to the total dependency benefit to the Director for deposit in the subsequent injuries fund. (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 723-727 [182 Cal.Rptr. 778, 644 P.2d 1257].)

den.) and *Industrial Indemnity Co.* v. *Industrial Acc. Com. (Jackson)* (1949) 14 Cal.Comp.Cases 130 (writ den.), found that since partial dependency of a person mentioned in section 3503[3] could be established where there is a promise unaccompanied by actual payment if the record discloses circumstances that warrant it, Luckenbach was a partial dependent of Nebolon and entitled to a death benefit of $6,480 (based on $135 a month).

The Board granted the Director's petition for reconsideration and found that Luckenbach was not a partial dependent because she had never, in fact, received a payment from her brother before his death. Noting the absence of appellate authority precisely in point and relying on *Industrial Indem. Co.* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 700, 705-708 [52 Cal.Rptr. 647], the Board reasoned that an actual contribution of support by the deceased employee was a prerequisite for a finding of partial dependency. We agree.

Pursuant to the constitutional directive (Cal. Const., art. XIV, § 4) for a complete system of workers' compensation the Legislature created an employer's liability for death benefits to compensate dependents where an industrial injury causes an employee's death. (§ 4701; *Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 176, 186-187 [176 Cal.Rptr. 920].) "A dependent's right to the statutory death benefits is not derived from the rights of the deceased employee; it is a right which is 'independent and severable from the employee's claim for disability compensation.' [Citations.] The amount of death benefits is fixed by statute and does not vary with the employee's earnings; the size of the benefits depends upon the relationship and extent of the dependency. (§ 4702.)" (*Zenith Insurance Co., supra,* at p. 187.)

Luckenbach, as Nebolon's sister, was in a relationship specifically mentioned by section 3503. ▮ In allowing death benefits, the Legislature is not limited to dependents with a legal or moral claim to support from the deceased employee, but may extend the benefit to those whose maintenance has been voluntarily and gratuitously assumed by the employee. (*Moore S. Corp.* v. *Industrial Acc. Com.* (1921) 185 Cal. 200, 204-206 [196 P. 257, 13 A.L.R. 676].) Partial dependency "shall be determined in accordance with the *facts as they exist at the time of the injury of the employee.*" (§ 3502, italics added.) The true test of dependency in fact is not whether the dependent was compelled to rely upon the deceased employee's contributions for the bare necessities of life, but whether the dependent relied

---

[3]Section 3503 provides so far as pertinent: "No person is a dependent of any deceased employee . . . unless the person bears to the employee the relation of . . . sister . . . ."

on the contributions for support according to his or her accustomed mode of living. (*Larsen* v. *Industrial Acc. Com.* (1950) 34 Cal.2d 772, 774 [215 P.2d 16]; *London G. & A. Co., Ltd.* v. *Indus. Acc. Com.* (1927) 203 Cal. 12, 16 [263 P. 196].) These provisions are liberally construed in favor of the injured employee to carry out the purposes of the workers' compensation law. (§ 3202.) While a narrow construction would defeat the plain intent of the law (*Insurance Co.* v. *Industrial Acc. Com.* (1927) 82 Cal.App. 414, 419-420 [255 P. 764]), the rule of liberal construction cannot be used to relieve a party from meeting the evidentiary burden of proving dependency by a preponderance of the evidence. (§ 3202.5.)

■ "A mere promise of future support is not, as a rule, a basis for a dependency finding, except where circumstances indicate a bona fide assumption of responsibility for support without opportunity to make contributions prior to the injury." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1986) § 15.02[3], p. 15-5, fns. omitted.) ■ Thus, the question here is whether the circumstances indicated Nebolon's bona fide assumption of responsibility for support without opportunity to make a contribution before his death. After learning of his sister's separation, Nebolon promised to help her in a telephone conversation in July. While he did not discuss the precise amount with Luckenbach, he told their parents that he could contribute $135 a month and urged them to provide a like amount so she could make her house payments. Nebolon had scheduled a visit to his sister the weekend after he was killed. In the light of the uncontroverted evidence, the WCJ found that Luckenbach was a partial dependent of Nebolon.

The Board reversed the WCJ, relying on the decision of this court (Div. One) in *Industrial Indem. Co.* v. *Industrial Acc. Com., supra,* 243 Cal.App.2d 700. In that case, the surviving wife and son of the deceased employee claimed death benefits. The wife and son were nonresident aliens. The parties stipulated that the deceased had not made any contributions to either applicant during the preceding 20 years. The commission found that both were entitled to benefits because of the deceased's legal liability for the support of his wife and incapacitated adult son. This court first held that pursuant to former section 3500 the conclusive presumption of total dependency did not apply to nonresident aliens, and then concluded that the deceased's mere legal obligation unaccompanied by any contributions was insufficient to establish dependency. ■ This court explained that the basic philosophy of the workers' compensation law was that death benefits represent compensation for loss of support, and then continued, at page 707: "The California courts have . . . repeatedly based dependency in fact on contributions for support actually made by the deceased employee

to the dependent and relied upon by the latter rather than upon a mere legal obligation or liability to furnish support unaccompanied by any contributions. [Citations.]"

Applying the above principle to the instant case, we note that on the uncontradicted evidence in the record and the stipulation of the parties, Nebolon made no contribution to the support of Luckenbach before his death. Our Supreme Court has long held that partial dependents must establish proof of their dependency. (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 31 Cal.3d at p. 720, citing *Spreckels S. Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 256, 258 [199 P. 8].)

The Board distinguished two of its own decisions[4] on which the WCJ relied. In *Union Lumber Co.* v. *Industrial Acc. Com. (Matthews), supra,* 7 Cal.Comp.Cases 178, the employee sustained a fatal injury a day or two after promising to support his mother and family. The commission found dependency, and this court (Div. Two) denied a writ of review. In *Industrial Indemnity Co.* v. *Industrial Acc. Com. (Jackson), supra,* 14 Cal.Comp.Cases 130, the Board predicated a finding of total dependency on an oral understanding of support; this court (Div. One) denied a writ of review. However, in both *Matthews* and *Jackson* the Board relied on factual circumstances which indicated a bona fide assumption of responsibility for support based on a past history of support.

In *Matthews,* the deceased employee lived at home with his father, mother, and two minor sisters before serving in the military from February until about October 1, 1941. While at home he had paid board and room and occasionally had given his mother money when she needed it; he made no contributions to the family while in the military. On October 31, 1941, his father, who had been steadily employed as a woodsman, was so seriously injured that it was doubtful that he could ever work again. The employee told his mother that he would give her $20 or $25 a month above his payments for board and room, and more if necessary, and that he would take care of the family, which had very little income. The employee was killed in an industrial accident less than a week later, on November 5, 1941; he had given his mother only $19 in the four or five weeks he was employed before

---

[4]Respondents erroneously assert that these unpublished decisions may not be properly cited to this court. (Cal. Rules of Court, rule 977.) The Board has approved the citation of writ-denied summaries published in the California Compensation Cases. (Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 10.24, pp. 367-368.) Accordingly, the courts permit citation of California Compensation Cases and occasionally cite them in published opinions. (For example, see *General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331, 336 [228 Cal.Rptr. 243, 721 P.2d 124].)

his death. The commission (Board) determined that the burden of supporting the dependent family had shifted to and been assumed by the employee, even though a pattern of actual current contributions had not been established.

In *Jackson,* the mother had two sons, Seth (the deceased employee) and Grover; she had used up her resources in the course of a long illness. By August 1948, her condition permitted her to move to the house of Grover, who was married. He charged her nothing for room and board, but made no cash contributions to her support. Seth had given his mother a total of $400 for her support from September 1947 until May 1948, when he became engaged in a mining venture that produced no income. He commenced work in August 1948 as a tree faller and was fatally injured in an industrial accident on September 11, 1948. Testimony was received that it was the understanding of the parties that as Seth was single and Grover was married, the mother would move in with Seth, keep house for him, and be supported by him as soon as she was physically able to do so. The commission (Board) determined that the mother was totally dependent on Seth, based upon a background of actual past contributions and circumstances justifying the expectation of further support.

Thus, in both *Matthews* and *Jackson,* substantial evidence established not only circumstances justifying the dependents' expectation of future support, but a pattern of actual past contributions by the deceased employee.

Here, it was conclusively established that Luckenbach had not received any support after Nebolon's promise of assistance, and she failed to establish any past dependency on Nebolon for a needed supplement to her income. We hold therefore that the Board properly concluded that Luckenbach was not a partial dependent of her brother.

At the oral argument, Luckenbach reiterated her contention that she was deprived of due process. Luckenbach, relying on Board rule 10850,[5] argued that the Board was required to dismiss the Director's petition for reconsideration as it had not been served on her. The record, however, reveals that the initial failure to serve Luckenbach was a clerical error. The Board properly exercised its authority not to dismiss the petition after finding that Luckenbach was not prejudiced by receiving the petition on January

---

[5]So far as pertinent, California Administrative Code, title 8, section 10850, provides: "Service of copies of the petition for reconsideration shall be made on all parties to the case . . . . Failure to file proof of such service shall constitute valid ground for dismissing the petition for reconsideration."

24, 1986, and that Luckenbach had failed to take advantage of the extension of time granted to her to answer the Director's petition for reconsideration. We can only conclude that Luckenbach was not deprived of due process.

■ Petitioners' and Luckenbach's contention that the Director's petition for reconsideration required verification is equally without merit. Although section 5902 provides that a petition for reconsideration shall be verified in the manner required for verified pleadings in courts of record, Code of Civil Procedure section 446 specifically provides that when the state or any officer in an official capacity is a plaintiff, the complaint need not be verified. This exception applies to proceedings before the Industrial Accident Commission, the predecessor of the Workers' Compensation Appeals Board. (Cf. *Seckels* v. *Department of Indus. Relations* (1929) 98 Cal.App. 647, 648 [277 P. 497].) Further, verification is not a jurisdictional requirement. (*United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915 [210 Cal.Rptr. 453, 694 P.2d 138]; *People* v. *Birch Securities Co.* (1948) 86 Cal.App.2d 703, 707 [196 P.2d 143].)

Respondents also assert that petitioner Transport Insurance Company should be sanctioned for filing a frivolous appeal pursuant to Code of Civil Procedure section 907. Given the paucity of appellate authority on the precise question presented (as noted by the Board), respondents' argument predicated on Code of Civil Procedure section 907 is specious.

The writ of review is denied.

Scott, Acting P. J., and Merrill, J., concurred.