[No. D054197. Fourth Dist., Div. One. Oct. 13, 2009.]

TANIA ESQUIVEL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CORRECTIONS
CORPORATION OF AMERICA SAN DIEGO DETENTION et al.,
Respondents.

COUNSEL

Law Offices of O'Mara & Hampton and Thomas I. Hampton for Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Laughlin, Falbo, Levy & Moresi and Matthew D. Hurlimann for Respondents Corrections Corporation of America and New Hampshire Insurance Company.

OPINION

NARES, Acting P. J.—At the time this case arose, Tania Esquivel, a correctional officer receiving benefits under the Workers' Compensation Act (the Act), resided in the City of San Diego and was being treated for her industrial injuries by medical providers located within eight miles of her home. For reasons unrelated to her need for that treatment, Esquivel drove about 130 miles to her mother's home in Hesperia, in San Bernardino County. Esquivel suffered serious new injuries when she drove through a stop sign in Hesperia while en route from her mother's home to the San Diego offices of the medical providers.

The workers' compensation judge (the WCJ) found that Esquivel's motor vehicle accident injuries were a compensable consequence of her existing industrial injuries and awarded her temporary disability indemnity and additional medical benefits. Respondents Corrections Corporation of America San Diego Detention and New Hampshire Insurance Company petitioned the Workers' Compensation Appeals Board (the Board) for reconsideration of the WCJ's findings and award in favor of Esquivel. The Board issued an order granting respondents' reconsideration petition and reversed the WCJ's findings and award, finding that the accident occurred too far from Esquivel's home and her destination to reasonably assign the risk of injury en route to the employer. Esquivel then petitioned this court for review of the Board's order and decision. We granted review.

This is not the typical case in which an industrially injured employee suffers new injuries while traveling a relatively short distance to a medical provider's office for treatment of the existing injury. Here, Esquivel suffered her new injuries shortly after she began an unusually long trip (over 100 miles) to her medical appointments from a location far away from her home, her place of work, and her medical providers' offices.

The issue we must decide is whether there is a reasonable geographic limitation on an employer's risk of incurring compensability liability under

the Act with respect to new injuries an employee suffers while en route to or from a medical appointment for examination or treatment of an existing industrial injury. We conclude there is and hold that the employer bears this risk while the employee is traveling a reasonable distance, within a reasonable geographic area, to or from the medical appointment. Under our holding, a new injury that an employee suffers while traveling a reasonable distance, within a reasonable geographic area, to or from a medical appointment for examination or treatment of his or her existing compensable injury is also compensable under the Act. In the absence of a specific statutory or regulatory test for determining both the boundaries of the applicable "reasonable geographic area" limitation and what constitutes a "reasonable distance," we also hold that such determinations must be made on a case-by-case basis considering all relevant circumstances.

■ Applying our holdings to the facts of this case, we conclude the Board did not err in finding that Esquivel's new injuries are not compensable under the Act because they clearly occurred outside the reasonable geographic area of her employer's compensability risk. Accordingly, we affirm the Board's order and decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Esquivel's Industrial Injuries*

It is undisputed that in 2003 and 2005, Esquivel sustained injuries arising out of, and in the course of, her employment with Corrections Corporation of America San Diego Detention as a correctional officer. With respect to those injuries, Esquivel was insured through her employer for workers' compensation by New Hampshire Insurance Company.

Esquivel filed two applications for adjudication seeking workers' compensation benefits for her industrial injuries. As a result, Esquivel came under the care and treatment of Marcia Elfenbaum, M.D., a pain management specialist whose office is located in the City of San Diego. Upon Dr. Elfenbaum's referral, Esquivel also enrolled in group therapy for pain management at Behavioral Pain Services, which is also located in the City of San Diego.

### B. *Esquivel's New Injuries and Amended Workers' Compensation Claim*

In May 2007[1] Esquivel resided in the City of San Diego. The distance from her home to Dr. Elfenbaum's office on Genesee Avenue in San Diego is

---

[1] All further dates are to calendar year 2007 unless otherwise specified.

about eight miles, and the distance from her home to the offices of Behavioral Pain Services on Kenyon Street (also in San Diego) is about seven miles.

The weekend before Monday, May 21, Esquivel drove from her home in San Diego to her mother's house in Hesperia in San Bernardino County, California, for a visit.

On May 21, shortly before 8:00 a.m., Esquivel left her mother's home in Hesperia intending to drive back to San Diego to attend a group therapy session at Behavioral Pain Services and then go to her appointment with Dr. Elfenbaum later that day. The distance from Esquivel's mother's home in Hesperia to Dr. Elfenbaum's office in San Diego is about 136 miles.

Within minutes of leaving her mother's house, while en route to her appointments in San Diego, Esquivel drove through a stop sign in Hesperia and collided with two other cars. Esquivel suffered serious injuries. According to the traffic collision report prepared by a California Highway Patrol officer, Esquivel caused the accident by failing to stop at a stop sign in violation of Vehicle Code section 22450, subdivision (a). Esquivel later claimed that her motor vehicle accident injuries were a compensable consequence of her industrial injuries.

### C.  The WCJ's Findings and Award

After conducting a trial on Esquivel's workers' compensation claims in this matter, the WCJ issued his findings, award and orders (hereafter findings and award). Without citation to authority, the WCJ ruled that "one may begin a journey to medical treatment from anywhere, not just one's home or workplace," and "[w]hat matters is the patient's intent, not her starting point." The WCJ found that when the accident occurred, Esquivel was intending to drive directly from Hesperia to her first medical appointment at Behavioral Pain Services in San Diego, and she did not deviate from the route she needed to take. The WCJ also found that because Esquivel was "traveling to treatment for her industrial injuries when she was injured" in the accident, her injuries were a "compensable consequence of treatment for the two admitted industrial injuries." The WCJ awarded Esquivel temporary disability indemnity in a specified weekly amount, plus further medical treatment.

### D.  Respondents' Petition for Reconsideration and the WCJ's Recommendation

Respondents challenged the WCJ's findings and award by bringing a petition for reconsideration, contending that (1) the WCJ "[f]ail[ed] to set forth reasons or grounds to support a finding that [Esquivel's] motor vehicle

accident, which occurred 136 miles from her home, [was] a compensable consequence of her industrial injuries"; (2) the WCJ "[i]ncorrectly appl[ied] the burden of proof to [defendants] rather than [to Esquivel]"; (3) the WCJ "[f]ail[ed] to apply a test which limits [the] employer's liability to a reasonable geographical area"; (4) the WCJ "[f]ail[ed] to recognize [Esquivel's] negligence of running the stop sign as an intervening act"; and (5) "[t]he evidence [did] not justify the findings of fact because the WCJ failed to address [Esquivel's] lack of credibility and failure to attend prior [g]roup sessions."

Esquivel answered the petition for reconsideration. The WCJ thereafter issued a report recommending that the Board deny the petition.

E.  *The Board's Order and Decision*

In October 2008 the Board issued its order and decision granting respondents' petition for reconsideration and reversing the WCJ's determination that Esquivel's motor vehicle accident injuries were a compensable consequence of her industrial injuries. Noting that "there is no test to determine the reasonable geographical area of an employer's risk for compensability of injuries sustained during travel to a medical visit related to an industrial injury," the Board concluded that "[t]he lack of an established test does not mean there is no limit."

Stating that "[w]hether [Esquivel] deviated from her intended journey is not the issue in this case," the Board found her motor vehicle accident injuries were not a compensable consequence of her industrial injuries for purposes of the Act because the accident "occurred too remotely from her home and her destination . . . to reasonably assign the risk of injury en route to the employer." The Board also found that it "need not select a precise test in this case, since the distance from [Esquivel's] accident to her medical appointment—136 miles, by [respondents'] reckoning—was clearly excessive and unreasonable." The Board reasoned that Esquivel's "location at the time of her accident was outside the vicinity of her home and her doctor's office," and "[t]he distance was without question substantial." Citing *Laines v. Workmen's Comp. Appeals Bd.* (1975) 48 Cal.App.3d 872 [122 Cal.Rptr. 139] (*Laines*) and *Durham Transportation Co. v. Workers' Comp. Appeals Bd.* (2003) 68 Cal.Comp.Cases 469 (*Durham*), the Board stated it agreed that "the risk should be borne by the employer in . . . cases . . . where the employee travels without substantial deviation from home or work or from some other starting point within a reasonable geographic distance," but found that "this case does not fall within those reasonable parameters." The Board stated that it saw "no reason why the employer should bear the risk of extended travel unrelated to the need for medical treatment." Esquivel's petition for writ of review followed.

## DISCUSSION

Esquivel contends the Board misapplied standards set forth in *Laines, supra*, 48 Cal.App.3d 872 and *Durham, supra*, 68 Cal.Comp.Cases 469. Specifically, she claims the Board's order granting reconsideration, and its decision to reverse the WCJ's determination that her motor vehicle accident injuries were a compensable consequence of her industrial injuries, should be set aside because (1) the dispositive issue in this case is whether there is "a showing [that she deviated] from the direct route from [her] mother's home in Hesperia to her doctor's [*sic*] appointments in San Diego"; (2) the Board erred by concluding that whether she deviated from her intended journey was not the issue in this case; and (3) respondents presented no evidence of any deviation that would make her motor vehicle accident injuries noncompensable. Esquivel maintains there is no geographic limit to an employer's risk of compensability liability under the Act for new injuries an employee suffers while en route to a medical appointment for treatment of an existing industrial injury, so long as the employee does not materially deviate from a reasonably direct route to the medical appointment. She also maintains her motor vehicle accident injuries are compensable under the Act because there is no evidence to show that, at the time of her accident, she had materially deviated from a reasonably direct route from her mother's home in Hesperia to her medical appointments in San Diego. Esquivel's contentions and her reliance on *Laines* and *Durham* are unavailing.

■ The California Supreme Court has explained it is "fundamental" that to be compensable under the Act, an employee's injuries must arise out of and in the course of his or her employment. (*Southern California Rapid Transit Dist., Inc. v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 161 [151 Cal.Rptr. 666, 588 P.2d 806] (*RTD*), citing Lab. Code,[2] § 3600.)

In *Laines*, the Court of Appeal held as a matter of first impression that an injury an employee suffers while traveling to a medical appointment for treatment of an industrial injury should be held to be an injury arising out of and in the course of employment within the meaning of section 3600, even if the existing injury was not a factor contributing to the new injury, and the journey to the medical appointment did not commence at the employee's place of employment. (*Laines, supra*, 48 Cal.App.3d at pp. 874–875, 877, 880.) There, the industrially injured employee was injured again while en

---

[2] All further statutory references are to the Labor Code. As pertinent here, subdivision (a) of section 3600 provides that an employer is liable for an employee's injuries "*arising out of and in the course of the employment* . . . in those cases where the following conditions of compensation concur: [¶] . . . [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment[; and] [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence." (Italics added.)

route from his attorney's office to a medical examination in connection with his existing injury. (*Id.* at pp. 873–874.)

In holding that the employee's new injuries were compensable, the *Laines* court did not address the issue squarely presented in the instant case: Is there a geographic limitation on an employer's risk of incurring compensability liability under the Act with respect to new injuries an employee suffers while en route to a medical appointment for examination or treatment of an existing industrial injury? The Court of Appeal in *Laines*, however, did allude as follows to the employer's risk of incurring such liability: "The most serious problem with providing coverage in the case of the trip to the doctor's office in a case such as petitioner's, is that *the employer lacks the opportunity to exercise any control over the trip*. The time the trip is made, the route followed, and the means of transportation employed are completely within the discretion of the employee, and *the employer is thus unable to insure that the trip is reasonably safe and free of unnecessary hazards.*" (*Laines, supra,* 48 Cal.App.3d at p. 879, italics added.)

Here, Esquivel contends that, as an industrially injured worker, she "has the same freedom of travel as all other citizens," and the fact that she was injured at work "should not, and does not, curtail [her] right to visit her relatives who live approximately 140 miles away." Suggesting there is no geographic limit to an employer's compensability risk under the Act for new injuries an employee suffers while en route to a medical appointment for treatment of an existing compensable injury, Esquivel asserts that "[t]he *Laines* court did not put a mileage limit on the distance the injured [employee] needed to travel to his medical appointment . . . ."

Esquivel is correct in asserting that she has the same freedom to travel as all other citizens. (*In re White* (1979) 97 Cal.App.3d 141, 148 [158 Cal.Rptr. 562] ["[t]he right to intrastate travel (which includes intramunicipal travel) is a basic human right protected by the United States and California Constitutions as a whole"].) She also correctly asserts that her status under the Act as an industrially injured employee entitled to treatment of her injuries does not curtail her right to visit her mother in Hesperia about 140 miles away from Esquivel's home, workplace, and medical treatment providers.

■ Esquivel's reliance on *Laines*, however, is misplaced because (as already noted) the Court of Appeal in that case did not address the issue of whether there is a geographic limitation on an employer's risk of incurring compensable liability regarding new injuries an employee may suffer while en route to a medical appointment for examination or treatment of an existing industrial injury. Here, the Board correctly noted that "[t]he opinion in *Laines* was silent regarding the geographical distances between the employee's

home, workplace, attorney's office, and medical appointment." The fact that *Laines* did not address the issue presented here does not mean that such limitation on an employer's compensability risk in cases such as the instant one does not exist. "As is well established, a case is authority only for a proposition actually considered and decided therein." (*In re Chavez* (2003) 30 Cal.4th 643, 656 [134 Cal.Rptr.2d 54, 68 P.3d 347]; see also *Styne v. Stevens* (2001) 26 Cal.4th 42, 57 [109 Cal.Rptr.2d 14, 26 P.3d 343] ["An opinion is not authority for a point not raised, considered, or resolved therein."]; *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ["Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered."].)

The California Supreme Court followed the reasoning in *Laines* in *RTD, supra*, 23 Cal.3d 158. In *RTD*, an employee was injured in an automobile accident as he was returning home from his employer's office where he had delivered a medical release required by his employer that authorized the employee to return to work after a previous industrial injury. (*Id.* at p. 160.) Citing *Laines* with approval, the high court held that "a second injury may be found compensable where as a consequence of a prior compensable injury an employee is required by his employer to present to the employer a doctor's release prior to returning to work and the employee, after going to his place of employment to present the release, is injured in an automobile accident as he drives homeward." (*Id.* at pp. 165–166.) Like *Laines*, however, *RTD* did not address the issue presented here.

Esquivel primarily relies on the Board's decision reported in *Durham, supra*, 68 Cal.Comp.Cases at page 472,[3] for the proposition that an injury an employee suffers in a motor vehicle accident while traveling to a medical

---

[3] Although the *Durham* opinion was not published in the Official California Appellate Reports, it is not subject to California Rules of Court, rule 8.1115(a), which provides (with exceptions specified in rule 8.1115(b)) that "an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action." *Durham* is an example of what the courts in California have variously referred to as a "writ-denied summar[y]" (*Wings West Airlines v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4 [232 Cal.Rptr. 343]), a "summary denial of a petition for judicial review" (*Coltherd v. Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 455, 462 [275 Cal.Rptr. 130]), a " 'denial[] of writ[] of review' " (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197]), a " 'writ denied' summar[y]" (*Victor Valley Transit Authority v. Workers' Comp. Appeals Bd.* (2000) 83 Cal.App.4th 1068, 1075, fn. 9 [100 Cal.Rptr.2d 235]), and a "writ denied opinion" (*Farmers Ins. Group of Companies v. Workers' Comp. Appeals Bd.* (2002) 104 Cal.App.4th 684, 689, fn. 4 [128 Cal.Rptr.2d 353]). In *Ralphs Grocery Co.*, we explained that while such cases "have no stare decisis effect as to the appellate court denial [citations], they are citable authority as to the holding of the Board [citations]." (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd., supra*, 38 Cal.App.4th at p. 827, fn. 7.)

appointment for treatment of an industrial injury is a compensable consequence of the industrial injury unless the employee has materially deviated from a reasonably direct route to the appointment for a purpose not germane to the treatment.

Esquivel's reliance on *Durham* is misplaced. In *Durham*, the employee left her home to attend a physical therapy appointment, at a location about five miles away. (*Durham, supra*, 68 Cal.Comp.Cases at p. 470.) However, she first stopped at her father's house for a visit and then continued driving to the physical therapy appointment. (*Ibid.*) Between her father's house and the physical therapist's office she was injured in a motor vehicle accident. (*Ibid.*) Noting the *Laines* court's recognition that the employer has no control over the route an employee takes to a medical provider's office, and the holding in that case that the employer should bear the risk the employee may suffer additional injuries while seeking statutorily required medical care, the Board stated that the employer's risk " 'need not be limitless.' " (*Durham, supra*, at p. 472.) The Board, however, adopted a " 'deviation standard' " under which an injury is compensable under the Act " 'when it occurs while the employee is going to or coming from medical treatment for a compensable injury unless the employee *materially deviates from a reasonably direct route for a purpose not germane to the medical visit.*' " (68 Cal.Comp.Cases at pp. 471, 472, italics added.)

Applying this deviation standard, the Board in *Durham* found the employee's new injury was a compensable consequence of her existing industrial injury because she had not materially deviated from a reasonably direct route to her physical therapy appointment. (*Durham, supra*, 68 Cal.Comp.Cases at pp. 472, 473.) The Board reasoned that, if it assumed the trip to the appointment began at the employee's home such that she made one trip with a deviation, the employee traveled a maximum distance of 14.5 miles before she was injured in the accident, whereas she would have traveled at least 4.8 miles had she driven directly to the therapist's office from her home; and thus the difference in distance " '[did] not rise to the level of substantiality' " and there was " 'no basis for concluding [she] substantially deviated from her route to the therapist's office.' " (*Id.* at p. 472.) Acknowledging the employee's right to freely travel, and assuming her home and her father's home were " 'diametrically opposite' " the therapist's office, the Board alternatively concluded there was no reason to find she made one trip (from her home to her father's home and then to the therapist's office), and thus, if the trip originated at her father's home, there was no showing that she had deviated from a direct route from her father's home to the therapist's office. (*Ibid.*) In support of its finding that the employee had not materially deviated from a reasonably direct route to her appointment, the Board in *Durham* also found that she " 'never left the vicinity of Oakland and West Oakland, both within the Oakland area.' " (*Ibid.*)

Esquivel's reliance on *Durham* is misplaced because the deviation standard the Board adopted in that case—under which an injury is compensable under the Act when it occurs while the employee is going to or coming from medical treatment for a compensable injury unless the employee materially deviates from a reasonably direct route for a purpose not germane to the medical visit—contains no reasonable geographic limitation on an employer's risk of incurring compensability liability for such injuries where, as occurred here, the employee has elected to travel to a destination far from her home, workplace and medical provider's office for a purpose not germane to the medical visit, and is then injured while traveling from that distant location to her medical provider's office without a material deviation from a reasonably direct route between that distant starting point and the medical provider's office. Taken to its logical conclusion, the *Durham* deviation standard, if adopted by this court, would render compensable an injury suffered by a San Diego employee who, for reasons unrelated to her need for statutorily required medical care, elects to travel from her home in San Diego to the East Coast, and then substantially increases her risk of injury (and her employer's risk of incurring compensability liability) by riding a motorcycle back to San Diego—without a material deviation from a reasonably direct route from her East Coast starting point—to attend a medical appointment for treatment of her existing industrial injuries. We see no reason why the employer should bear the increased risk of such extended travel when it is unrelated to the employee's need for medical treatment.

Esquivel's reliance on *Durham* is also misplaced because, notwithstanding the Board's adoption in that case of a deviation standard that does not explicitly incorporate a reasonable geographic limitation on the employer's risk of incurring additional compensability liability under the Act, the Board in fact did apply a rule of reasonableness by indicating that the employer's compensability risk was limited to the geographic area where the employee's home, her father's home, and the therapist's office were all located. As already noted, in finding the extra distance the employee drove to visit her father did not " 'rise to the level of substantiality,' " the Board reasoned that she " 'never left the vicinity of Oakland and West Oakland, both within the Oakland area.' " (*Durham, supra,* 68 Cal.Comp.Cases at p. 472.)

At oral argument on her petition, Esquivel relied for the first time on *Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1316 [37 Cal.Rptr.3d 587] (*Fleetwood*) and *Norman v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 87 (*Norman*). Her reliance on these cases is unavailing. In *Fleetwood,* the issue presented was whether the injured applicant, who was a design manager for a manufacturer of recreational vehicles (RV's), was on a " 'special mission' " for his employer when he was injured in an automobile accident as he and his wife were sightseeing in Italy *after* he completed the business portion of his trip to Europe.

(*Fleetwood, supra*, 134 Cal.App.4th at pp. 1320, 1325.) Noting that the "applicant's decision to extend his trip also increased the chance that he would be involved in an accident . . ." (*id.* at p. 1330), the Court of Appeal rejected the applicant's contention that his injuries were compensable under the "special mission" rule because he continued to look at RV's while sightseeing in Italy (*id.* at p. 1325). The *Fleetwood* court explained there was no evidence the applicant's employer "expected or required [him] to continue photographing RV's in between admiring Michelangelo's David and the Coliseum." (*Ibid.*) The special mission rule at issue in *Fleetwood* is not at issue in the instant case.

Esquivel's reliance on *Norman* is also unavailing. In that case, an employee sent to Las Vegas on business rejected transportation arranged by her employer, elected to drive her own vehicle to Las Vegas, turned back due to traffic on her way home, and was injured in an automobile accident when she resumed her journey the next day. (*Norman, supra*, 62 Cal.Comp.Cases at p. 88.) In denying benefits, the Board found the applicant's use of an unauthorized means of transportation to and from Las Vegas, as well as her return to Las Vegas when she encountered a traffic jam on her return trip, took her out of the course of her employment at the time of her accident. (*Id.* at p. 89.) *Norman*, like *Fleetwood*, is inapposite because it did not address the issue presented here.

■ We are persuaded that although none of the provisions of the Act or the implementing regulations contains an express geographic limitation on an employer's risk of incurring compensability liability for such injuries, such limitation is implied in the provisions of section 4600, subdivision (c), and the related regulation in California Code of Regulations, title 8, section 9780, subdivision (h). Section 4600 requires an employer to provide an employee with all medical treatment that is reasonably necessary to cure or relieve the effects of an industrial injury and also imposes on the employer liability for the reasonable expense of such treatment if the employer neglects or refuses to do so.[4] (§ 4600, subd. (a); see also 1 Herlick, Cal. Workers' Compensation Law (6th ed. 2008) § 4.01[1], p. 4-4.) "Control of an injured worker's medical treatment is initially placed with the employer." (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2009) § 3.9A, p. 164, citing

---

[4] Subdivision (a) of section 4600 provides in part: "Medical . . . treatment . . . that is reasonably required to cure or relieve the injured worker from the effects of his or her injury shall be provided by the employer. In the case of his or her neglect or refusal reasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

§ 4600, subds. (a), (c).) Furthermore, unless the employer or the employer's insurer has established a medical provider network (as provided for in § 4616), after 30 days from the date the injury is reported, the employee may be treated—at the employer's expense—by a physician of his or her own choosing or at a facility of his or her own choice. (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2009) § 5.05[1], p. 5-31, citing § 4600, subd. (c) (hereafter section 4600(c)).)

Of particular relevance here, the employee's qualified right to be treated by a physician, or at a facility, of his or her own choosing after the initial 30-day period, like the employer's obligation to pay for such treatment, is generally limited under section 4600(c) to a "reasonable geographic area," as follows: "Unless the employer or the employer's insurer has established a medical provider network as provided for in Section 4616, after 30 days from the date the injury is reported, the employee may be treated by a physician of his or her own choice or at a facility of his or her own choice *within a reasonable geographic area*." (Italics added.)

■ Section 4600(c) does not define the term "reasonable geographic area." Although the implementing regulation set forth in California Code of Regulations, title 8, section 9780, subdivision (h) also does not define that term, it mandates that certain factors—including "[t]he employee's place of residence, place of employment and place where the injury occurred"—be considered in determining a "reasonable geographic area" for purposes of section 4600(c). Specifically, California Code of Regulations, title 8, section 9780, subdivision (h) provides: "As used in this Article: [¶] . . . [¶] (h) *Reasonable geographic area*' within the context of . . . section 4600 shall be determined by giving consideration to: [¶] (1) The employee's place of residence, place of employment and place where the injury occurred; and [¶] (2) The availability of physicians in the fields of practice, and facilities offering treatment reasonably required to cure or relieve the employee from the effects of the injury; [¶] (3) The employee's medical history; [¶] (4) The employee's primary language." (Italics added.)

The foregoing authorities indicate a legislative intent that just as a rule of geographic reasonableness circumscribes under section 4600(c) both an employee's qualified right to be treated by a physician or at a facility of his or her own choosing after the initial 30-day period and the employer's obligation to pay for such treatment, a similar rule of geographic reasonableness should limit an employer's risk for compensability related to injuries sustained during travel to and from a medical appointment related to a compensable industrial injury, as the Board properly found in this case.

Additional support for recognition of a "reasonable geographic area" limitation on an employer's risk regarding compensability of such injuries is found in subdivision (e) of section 4600 (hereafter section 4600(e)), which grants an industrially injured employee the right to recover " 'reasonable expenses of transportation' " incurred in submitting to a medical examination, but limits his or her right to recover mileage fees to those incurred "from the employee's home to the place of the examination and back." (§ 4600(e)(2).) Specifically, subdivision (e)(1) of section 4600 provides in part: "When at the request of the employer, the employer's insurer, the administrative director, the appeals board, or a workers' compensation administrative law judge, the employee submits to examination by a physician, he or she shall be entitled to receive, in addition to all other benefits herein provided, all *reasonable expenses of transportation* . . . incident to reporting for the examination . . . ." (Italics added.)

Subdivision (e)(2) of section 4600, which addresses the meaning of the statutory phrase "reasonable expenses of transportation" in subdivision (e)(1) of that section, limits the employer's liability for such mileage fees to those incurred "from the employee's home to the place of the examination and back," as follows: "Regardless of the date of injury, *'reasonable expenses of transportation'* includes mileage fees *from the employee's home to the place of the examination and back* at the rate of twenty-one cents ($0.21) a mile or the mileage rate adopted by the Director of the Department of Personnel Administration pursuant to Section 19820 of the Government Code, whichever is higher, plus any bridge tolls. The mileage and tolls shall be paid to the employee at the time he or she is given notification of the time and place of the examination." (Italics added.)

We hold that the employer bears the risk of incurring compensability liability under the Act for an injury an employee suffers during travel to or from a medical appointment related to an existing compensable injury while the employee is traveling a reasonable distance, within a reasonable geographic area, to or from that appointment. Thus, a new injury that an employee suffers while traveling a reasonable distance, within a reasonable geographic area, to or from a medical appointment for examination or treatment of an existing compensable injury is also compensable under the Act. Conversely, where the employee chooses—for reasons unrelated to his or her need for medical treatment—to travel to a distant location beyond the reasonable geographic area of his or her employer's compensability risk, and is injured while traveling an unreasonable distance from that distant location

to a medical appointment for examination or treatment of an existing compensable injury, the employer will incur no such liability under the Act.

■ We do not adopt here a specific test for determining either the boundaries of the reasonable geographic area limitation on an employer's compensability risk that we recognize herein or what constitutes a reasonable distance in cases such as this. In the absence of such a test enacted by the Legislature or created by regulatory promulgation, we hold that such determinations must be made on a case-by-case basis considering all relevant circumstances. Such determinations should take into consideration all relevant circumstances in a given case, including (but not limited to) (1) the location of the employee's residence; (2) the location of the employee's workplace; (3) the location of the office of the employee's attorney; (4) the location of the medical provider's office; (5) the place where the new travel-related injury occurred; (6) the distance between the employee's point of departure and the medical provider's office along a reasonably direct route to that office; (7) the additional distance the employee traveled in the event he or she deviated from that reasonably direct route while en route to the medical provider's office; (8) the availability of medical providers in the fields of practice, and facilities offering treatment, reasonably required to cure or relieve the employee from the effects of the existing industrial injury; and (9) the reason or reasons for the employee's travel beyond a reasonable geographic area within which the employer ordinarily should bear the risk of incurring compensability liability in the event the employee is injured while traveling to or from the medical appointment.

Applying our holdings to the facts of this case, we conclude that whether we deem Esquivel's trip to her medical appointments in San Diego to have commenced at her San Diego residence or at her mother's home in San Bernardino County, the Board did not err in finding that Esquivel's motor vehicle accident injuries are not compensable under the Act because it is undisputed they occurred—for reasons unrelated to her need for medical treatment of her existing compensable injuries—near her mother's home in Hesperia more than 130 miles away from both her San Diego residence and the San Diego offices of her industrial medical providers; and thus her new injuries clearly occurred outside the reasonable geographic area, however delineated, of her employer's risk for incurring compensability liability for such injuries. To paraphrase one of the Board's findings, "[w]e see no reason why [Esquivel's] employer should bear the risk of [her] extended travel unrelated to the need for medical treatment." Accordingly, we affirm the Board's order and decision.

## DISPOSITION

The Board's order and decision are affirmed.

O'Rourke, J., and Aaron, J., concurred.